[No. 16594. *En Banc.* October 24, 1922.]

WILLIAM RAYMOND JONES, *Respondent,* v. JAMES C. HARRIS *et al., Appellants.*[1]

APPEAL (413)—REVIEW—VERDICT. A verdict on conflicting evidence will not be disturbed on appeal, although the evidence by no means preponderates in favor of the respondent.

MUNICIPAL CORPORATIONS (385)—USE OF STREETS—NEGLIGENCE—PERSONS LIABLE. The owner of an automobile who loans it to another is not liable for the latter's negligent driving, unless he was so incompetent as to make the same a dangerous instrumentality in his hands, and the owner knew of such incompetency.

SAME (389)—EVIDENCE (97)—ADMISSIONS—WEIGHT AND SUFFICIENCY. Under the rule that verbal admissions are to be received with great caution, the verdict of a jury that the owner of an automobile loaned it to an incompetent boy is not supported by substantial evidence, where it rests entirely on admissions by the owner, made the next day, testified to by plaintiff and one interested witness, and which were unsupported by other affirmative testimony, and contradicted by direct and circumstantial evidence (HOLCOMB, MITCHELL, and BRIDGES, JJ., dissenting).

[1]Reported in 210 Pac. 22.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered December 31, 1921, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained in an automobile collision. Reversed.

*W. C. Losey,* for appellants.

*Harry L. Cohn,* for respondent.

FULLERTON, J.—In this action the respondent, Jones, recovered against the appellants, Harris, for personal injuries received in a collision between an automobile owned by the appellants and driven by one Homer Steffer, and an automobile in which the respondent was riding, owned and driven by one Hogue.

The charge in the complaint is that Homer Steffer is of young and tender years, reckless and careless in the use and operation of automobiles, and incompetent to be intrusted with one; and that the appellants, with knowledge of these facts, intrusted their automobile to him, and that he, because of his carelessness, negligence and incompetency, while driving the automobile upon the streets of the city of Spokane, ran into the automobile in which the respondent was riding, causing the injury for which he sues.

The appellants question the sufficiency of the evidence to sustain the verdict; contending, first, that the evidence fails to show that the accident was caused by the negligence of Steffer; and second, that the evidence is insufficient to go to the jury on the question whether the appellants had ever consented to the use of their automobile by Steffer, whether Steffer was a reckless, careless and incompetent driver of automobiles, and whether the appellants had knowledge of these facts.

As to the evidence on the question of fault, no useful purpose would be served by setting it forth at length.

While, as we read it, the evidence by no means strongly preponderates in favor of the view that the cause of the accident arose entirely from the negligence and fault of Steffer, yet the evidence was in conflict, making it a question peculiarly for the jury to determine, and their finding thereon, under the circumstances, is, of course, conclusive in this court.

The evidence on the second of the questions consisted wholly of purported admissions made by the appellant James C. Harris. Mr. Harris is the auditor of a bank located in the city of Spokane. On the day following the accident, the respondent, after having learned that the automobile Steffer was driving was the appellants' property, called at the bank, accompanied with Mr. Hogue, to interview Mr. Harris. The admissions were purported to have been made in the conversation had between them at this interview, and in a conversation had later in the day in a garage. The respondent, on his direct examination, in answer to questions by his own counsel, testified concerning them as follows:

"Q. . . . Just what was said about the boy driving the car and their knowledge of it, and what they knew of his reckless tendencies? A. Well, Mr. Harris says: 'We guessed that this boy was reckless, a reckless nut, and wished it had been him that got his neck broke instead of you folks getting hurt; at the time, we knowed all the time that this boy was reckless with their car and liable to kill anybody.' Q. What did he say with reference as to whether he and his wife had loaned him the car and knew as to his competency or otherwise, at the time they loaned it to him? A. They had traded their old Ford off for this new car, and they had to let the boys use some kind of a car because they all lived in the house together, to keep peace they had to let them have the car. Q. What did he say at that time as to whether Mr. and Mrs. Harris had loaned the boy the car—what did he say as to what they knew about his reckless tendencies when they loaned him the

car? A. He told me him and his wife had loaned the boy the car. Mr. Losey: 'I didn't get that.' A. With the permission of him and his wife the boy had the car. Mr. Cohn: What did he say as to what they knew? A. He was a reckless nut and liable to kill anybody. Q. What did he say as to whether he wishes the accident had been to somebody else? A. He said he wished he had broke his neck instead of crippling us up.''

On cross-examination he further testified:

''Q. What was it he said about knowing that he loaned the boy the car and knew he was a reckless driver? A. With the permission—between him and his wife, with the knowledge of him and his wife the boy had the privilege to use this car. Q. Did he tell you he was away on a fishing trip that night? A. Yes, and that he hung the keys up in the house on a door where they knew where the keys were for this same car. Q. He told you that he hung the keys up? A. Yes, sir. Q. Is that right? A. Yes, sir. Q. Who was present when that was said? A. Mr. Hogue, Mr. Harris and myself.''

Mr. Hogue gave the following version of the admissions:

''Q. Mr. Hogue, were you with Mr. Jones when you went in to see Mr. Harris the next day? A. Yes, sir. Q. Did you hear Mr. Harris say anything at that time as to whether this boy had permission to use this car and whether he and his wife knew he was reckless and careless? A. I did. Q. Tell the jury what he said. A. Mr. Harris made the statement, and I believe I can quote it almost word for word, that he and his wife both knew this boy to be very reckless, and they should never have given him permission to use this car, but they had to do it in order to keep peace in the family; that he knew the boy was a reckless nut. He made the statement that he wished the boy got his neck broke instead of us, and he made a similar remark several times that afternoon when talking about the accident.''

Apart from some further reiteration of the admissions in slightly varying language drawn from the wit-

nesses on cross-examination, this is all there is on the particular questions. No attempt was made to show by direct evidence that Steffer had permission to use the car on the particular occasion, or that he had a general permission to use it. Nor was any attempt made to show by direct evidence that he was habitually or generally heedless or reckless, or heedless or reckless when driving an automobile, or incompetent otherwise to drive one, and, of course, no attempt made to show by direct evidence that the appellants, or either, knew of his habits and qualifications in these particulars. On the contrary, the direct evidence was all the other way. It was testified by both of the appellants and by Steffer himself that the car was taken on the particular occasion without the appellants' knowledge or consent, and that he had no general permission to use it, and that he had never before driven this automobile or any of the automobiles previously owned by the appellants. Mr. Harris denied emphatically that he had made the admissions accredited to him, and in this he is corroborated by the floorwalker of the bank, who met the respondent and his companion when they entered the bank and who conducted them to Mr. Harris' desk when they announced a desire to see him. The proprietor of the garage, to which the parties subsequently went to ascertain the cost of repairing the damage to the Hogue car, also says that, in the conversation between the parties had before him, no admission of liability was made by Mr. Harris; that the talk between them there was of compromise, Mr. Harris' desire being to avoid litigation.

The evidence relating to the manner in which Steffer handled the automobile while driving it prior to the accident is that he exercised care and caution. Both he and the persons with him at the time of the accident

say that the automobile was new, with tight bearings, and was driven cautiously; that at no time did the speed exceed twenty miles an hour, a precaution which expert mechanics testified was necessary to prevent the bearings from overheating. Conceding that the evidence shows that Steffer was negligent at the time of the accident, this act of negligence by no means convicts him of habitual negligence. The law is well settled that a single act of negligence is not sufficient to support a finding that the guilty party is generally or habitually negligent.

While an automobile is not regarded in law as an inherently dangerous instrumentality, and the owner thereof is not generally liable for its negligent use by another to whom he loans or intrusts it for that other's purposes, yet there is an exception to the rule. If the owner loans or intrusts his automobile to another person, even for that person's purposes, who is so reckless, heedless or incompetent in his operation of automobiles as to render the machine while in his hands a dangerous instrumentality, he is liable if he knows, at the time he so intrusts it, of the person's character and habits in that regard. The liability in such instances rests upon the combined negligence of the owner and of the operator; negligence of the one in intrusting the automobile to an incompetent person, and of the other in its negligent operation. Since, therefore, the respondent's cause of action was based upon the exception to the general rule, it was incumbent upon him to prove by substantial evidence, in order to justify a verdict in his favor, (1) that the appellants loaned or intrusted their automobile to Steffer; (2) that Steffer was so far reckless, heedless and incompetent in the operation of automobiles as to render an automobile in his hands a dangerous instrumentality; (3) that the appellants knew of the incompetency of Steffer at the

time they intrusted him with the automobile; and (4) that the respondent was injured by reason of the negligent operation of the automobile by Steffer.

The fourth of these propositions, as we have said, was sufficiently proven by independent testimony. But since the proof of the others rests wholly in the purported admissions of the appellant James C. Harris, the question is, was the evidence so far substantial as to make them questions to the jury.

In *Ludberg v. Barghoorn,* 73 Wash. 476, 131 Pac. 1165, the only case from this court in which the question was directly passed upon, we held that it was not. In that case recovery was sought of an owner of an automobile for personal injuries caused by its negligent operation while in the hands of another. The defense was that the operator of the automobile was using it at the time of the injury for purposes of his own and not for purposes of the owner. Evidence was offered tending to show admissions on the part of the owner, made shortly after the accident, that the automobile was then being operated by a member of the owner's family. A challenge to the sufficiency of the evidence was sustained by the trial court, and on the appeal the ruling of the trial court was sustained. It was urged on the argument that the admissions alone were sufficient to carry the case to the jury. But this court denied the rule, holding that it was not of that substantial character necessary to support an affirmative judgment.

The principle has support in the authorities. From the earliest times law writers and courts have animadverted upon this character of testimony. When uncorroborated by any supporting circumstance, it has ever been regarded as the weakest, most unsatisfactory and most dangerous of all the various kinds of evi-

dence.  Mr. Greenleaf, speaking of it, uses this language:

"With respect to all *verbal admissions,* it may be observed that they ought to be *received with great caution.*  The evidence, consisting as it does of mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood.  It frequently happens, also, that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say."  Vol. 1, § 200.

So Mr. Jones (Evidence, § 297), says:

"It is a familiar rule that verbal admissions should be received with caution and subjected to careful scrutiny, as no class of evidence is more subject to error or abuse.  Witnesses having the best motives are generally unable to state the exact language of an admission, and are liable, by the omission or changing of words, to convey a false impression of the language used."

In the early case of *Garrison v. Akin,* 2 Barb. (N. Y.) 25, Harris, J., speaking of verbal admissions, said:

"There have been but few judges or elementary writers, who have not had occasion to speak of the character of this kind of evidence; such is the facility with which it may be fabricated, and such the difficulty of disproving it, if false.  It is so easy, too, by the slightest mistake or failure of recollection, totally to pervert the meaning of the party and change the effect of his declarations, that all experience in the administration of justice has proved it to be the most dangerous kind of evidence, always to be received with great caution, unless sustained by corroborating circumstances."

In *Stephens v. Vroman,* 18 Barb. (N. Y.) 250, it was said of such admissions:

"They are not by any means conclusive, and not necessarily even *prima facie* evidence of the fact to which they relate."

In *Epps v. Dickerson*, 35 Iowa 301, the plaintiff sought to show that his agent had defrauded him in the sale of land. Proofs of the fraud rested in the testimony of a single witness, who purported to relate the verbal admissions of the agent and others charged as being connected with the fraud. Speaking of his evidence, the court said:

"We are free to confess, that in view of this whole record and evidence, his testimony does not command our credence. In the first place it only details alleged conversations and its very completeness and perfect fitting to the plaintiff's case is itself a just ground of suspicion under all the circumstances."

An examination of the cases on the question, collected in 22 C. J. 290 *et seq.*, will show that the courts themselves, when they have been the trier of the facts, have generally refused to give such evidence credence when contradicted and unsupported by any corroborating circumstance, and this even where the witness testifying was not a party to the cause and otherwise had no apparent reason for misinterpreting or misstating the admissions to which he testified. In this instance the purported admissions have not even the support of an unbiased witness; one of the witnesses was the plaintiff himself, whose very right of recovery depended upon the facts sought to be proven by the admissions, and the other had a claim for injuries to his automobile, the right to recovery for which depended upon the same facts.

There is elsewhere in the record much that shows the unreliability of the testimony as to the admissions, and the danger of resting a verdict upon such testimony. In the first place, one is struck with the very

completeness of the purported admissions; they not only cover everything necessary to maintain a recovery, but they anticipate and refute much that might be urged as a defense. In the second place, Mr. Harris is made, by the purported admissions, to state as fact matters which he then knew not to be fact, and matters which the evidence subsequently developed not to be fact. The first of these propositions is made clear by a mere reading of the purported admissions. The second can be demonstrated by a few illustrations. The respondent witness testifies that Mr. Harris stated that the appellants "had traded their old Ford car off for this new car," whereas the evidence subsequently showed that the automobile which he owned and traded in when the automobile in question was acquired was not a Ford, but was an automobile of a different manufacture. Again, the respondent testifies that Mr. Harris said that he and his wife "had to let the boys (presumably Steffer, and his companions on the ride) use some kind of a car because they all lived in the house together—to keep peace they had to let them have the car"; whereas the evidence showed that none of the persons riding in the automobile at the time of the accident, not even Steffer, lived in the house with the appellants as a member of their family. Mr. Harris is further made to say that "he hung the keys up in the house on a door where they knew where the keys were for this same car;" whereas there is no evidence that the automobile was ever kept under lock and key, and the evidence shows affirmatively that the automobile on this occasion was left by its owners in the open in front of their house, and that all Steffer had to do to take it was to start its motor power in the usual manner and drive it away. The testimony of the other witness is

not quite so minute, but even his testimony carries the inference that Mr. Harris stated that Steffer was a member of his family, subsequently developed in the evidence not to be the fact. The explanation for much of this possibly lies in the fact that the witnesses drew erroneous inferences from the surroundings. Steffer is the brother-in-law of Mr. Harris. He lived with his parents in one apartment of a double house of which Mr. Harris with his family lived in the other. The witnesses doubtless thought, when testifying, that the persons lived together as one family, whereas the proofs were that they maintained separate households.

Other circumstances worth noticing are that the witnesses say that all of the admissions were made while they were alone with Mr. Harris, whereas a part of the conversation at least took place in the presence of others. Mr. Harris is made constantly to refer to Steffer as ''a boy,'' as if he were of such tender years as to be without discretion, whereas, Steffer testified at the trial without being questioned as to its truth, that he was then twenty years old, and consequently must have been in his twentieth year at the time of the accident; and in every instance where consent or knowledge on the part of his co-defendant could be thought necessary to charge the community, Mr. Harris is made to bring in the name of his wife. In the language of the Iowa court, the testimony in ''its very completeness and perfect fitting to the plaintiff's case is in itself a just ground of suspicion.''

Testimony of disinterested witnesses as to admissions, when corroborative of other evidence, is sometimes evidence of a most convincing character. But when, as here, the testimony is that of interested witnesses, is not only uncorroborated, but is shown by undisputed evidence to be in a large degree contrary

to the actual facts, and is relied upon to prove the entire case, it cannot be said to rise to the dignity of evidence. If it were otherwise, the citizens' right of personal liberty and right of private property stands upon a very shadowy foundation.

This court early in its history discarded the scintilla of evidence doctrine, and has uniformly held that a verdict to be sustained must be supported by substantial evidence. Applying the rule to the present case, fortified by the case of *Ludberg v. Barghoorn, supra,* we hold that the present verdict and judgment is not supported by substantial evidence.

The judgment is reversed, with instructions to dismiss the action.

PARKER, C. J., TOLMAN, MACKINTOSH, HOVEY, and MAIN, JJ., concur.

HOLCOMB, J. (dissenting)—I dissent. When all the questions are analyzed, they are all merely questions of fact, on every one of which, resolved into four propositions by the writer of the majority opinion, there was competent testimony to go to the jury, who were the judges of the weight and credibility of the evidence. The judgment should be affirmed.

MITCHELL, J., concurs with HOLCOMB, J.

BRIDGES, J. (dissenting)—I dissent. As I read it, the substance of the court's opinion is that proof of declarations made by a defendant will not support a verdict, unless it is aided by other affirmative testimony. It may be conceded that such class of evidence should be considered with great caution, yet I cannot bring myself to the belief that it is wholly insufficient. Weak and unsatisfactory as the proof in this case seems to me, I think, under all our previous holdings, it was sufficient to take the case to the jury.