[No. 21020. Department One. April 4, 1928.]

## JOHN MENSIK, *Respondent*, v. CASCADE TIMBER COMPANY, *Appellant*.[1]

[1] NEGLIGENCE (3, 40)—FIRES—ACTION—QUESTION FOR JURY. In an action for damages caused to plaintiff's property by the negligent spread of fires in timber, a question for the jury is presented where there is substantial evidence that the fire spread from defendant's lands, and also evidence on the part of defendant that the damage was caused by the revival of smoldering fires on the lands of other parties, which spread to the lands of plaintiff.

[2] NEGLIGENCE (3, 18, 40)—FIRES—CARE REQUIRED AS AGAINST NEGLIGENCE OF ANOTHER—QUESTION FOR JURY. Whether plaintiff, whose property was threatened by a fire in nearby timber, was negligent in leaving his property to go in search of the fire warden and of men to help in fighting the fire, instead of staying to fight it alone, presents a question for the jury.

Appeal from a judgment of the superior court for Pierce county, Hodge, J., entered June 1, 1927, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

*Hayden, Langhorne & Metzger,* for appellant.

*E. K. Murray, Leo Teats,* and *Ralph Teats,* for respondent.

MITCHELL, J.—This is an action against the Cascade Timber Company to recover for damages based upon the alleged negligence of the defendant in the spread of fires set out by it to burn its logged-off lands. The trial resulted in a verdict for the plaintiff. The defendant has appealed from a judgment on the verdict.

The assignments of error are: (1) Denial of defendant's motion for a nonsuit; (2) denial of its motion for a directed verdict; (3) denial of its motion for judgment notwithstanding the verdict; and (4) enter-

[1]Reported in 265 Pac. 1084.

ing judgment on the verdict in favor of the plaintiff.

The fires set out by the appellant are the ones mentioned in *Mensik v. Cascade Timber Co.*, 144 Wash. 528, 258 Pac. 323. They were started at the company's camps 1 and 2 on September 18, 1924, near Alder, Pierce county, Washington. Camp 1 was located two miles north of camp 2. Respondent's property was two miles north, and about half a mile west, of camp 1. The fires advanced in the direction of respondent's property, which was burned on the afternoon of September 21, 1924, and thereafter the fire continued northward as shown by the evidence.

In August, 1924, a party other than the appellant burned logged off lands located two miles west of appellant's camp 1, leaving logs and stumps still burning, and one of appellant's theories in both its pleadings and proof was that about September 18 or 19, while its own fires at camps 1 and 2 were burning, smoldering fires in the old burn west caused a revival of that fire, which spread north and east towards, and finally caused the damage suffered by, the respondent. Evidence was introduced in support of that contention. Upon the whole case, it is claimed by the appellant that the evidence showed that respondent's loss was caused by the fire from the old burn to the southwest; that respondent did not show that his loss was caused by the fires from camps 1 and 2; and that at most the cause of the loss, whether by fire from the old burn or from appellant's camps, was so uncertain that the jury should not have been allowed to speculate thereon; and it is further contended by the appellant that the respondent by his own negligence contributed to his loss so as to bar a recovery.

[1] The vast amount of evidence in this case, forty-six witnesses upon the questions involved, forbids a detailed account of it. It has its conflicts. While the

appellant introduced evidence supporting its claim that respondent's property was burned by the starting afresh and spread of the fire on the old burn, as before stated, there is in the case substantial evidence to the contrary. On the other hand, there is substantial proof that the fires from camps 1 and 2 advanced continuously towards and destroyed respondent's property. True, there was a contrariety of opinion among the witnesses as to the direction of the wind at all times of the fire, such as to the east, northeast, north or northwest, but upon the whole of the testimony, the jury were well within their right and judgment in deciding, as they must have, that the wind, in a general way, was such as caused the fires from the camps to spread to respondent's property.

The apparent conflict in the opinion of the witnesses in this respect is explainable. That section of the country is rugged and abounds in streams, canyons and precipitous hills, and the several witnesses who testified as to the directions of the wind were at various locations in that general community with reference to those natural contours, and it is not only well known, but the proof in this case shows, that a general wind current is often perceptibly deflected in a local area by a large hill or obstacle, canyon or valley. All of these things were matters for the jury, and under the evidence in the case, conflicting as it was, we are not at liberty to set aside their verdict. We, of course, reach this conclusion under the rule called to our attention in appellant's brief, viz;

"This court early in its history discarded the scintilla of evidence doctrine, and has uniformly held that a verdict to be sustained must be supported by substantial evidence." *Jones v. Harris,* 122 Wash. 69, 210 Pac. 22; *Ziomko v. Puget Sound Elec. R.,* 112 Wash. 426, 192 Pac. 1009.

[2] Nor can it be held as a matter of law that there was negligence on the part of the respondent contributing to his loss, so as to bar a recovery. For three days the fire had been spreading rather slowly in his direction, mostly on a side hill somewhat east of south from his premises. South of his premises, for a mile or more, the land was covered with highly inflammable material, including standing snags of various heights. He testified that just before noon on the 21st he noticed the fire on the hillside east of south from his place, that the wind was then blowing from the southeast to the northwest, "The fire was coming down straight towards my place . . . The wind was blowing. I was alone on the place." Having no telephone he hurried to Eatonville about a mile and a half distant for help between noon and one o'clock. Upon arriving there, he could not find the fire warden stationed at that place, but in a reasonably short time he procured two men to help him, and upon their reporting ready to go with him he quit eating his dinner, about which time and again later on, as he was driving back with his help, he learned that his buildings and property had been burned. He continued on his way until, getting nearer home, he ascertained he could not reach his place on account of the fire. There was evidence, uncontradicted, that for the first time during the fire there were spot fires, that is fires starting in new places from live brands blown from standing snags, about noon on the 21st in the direction of respondent's premises; and the great preponderance of the evidence was to the effect that, commencing about noon that day and lasting through most of the afternoon, the wind was very high and greater than it had been at any time during the four days of the fire. Under the circumstances, the question of whether the

respondent acted as a reasonably prudent person should act was a question for the jury.

Affirmed.

MACKINTOSH, C. J., TOLMAN, PARKER, and FRENCH, JJ., concur.