[No. 24453. Department One. July 24, 1933.]

EILEEN HART, *a minor, by Mary Hart, her guardian ad litem, Appellant,* v. E. F. HOGAN, *Respondent.*

THEODORE HART *et al., Appellants,* v. E. F. HOGAN, *Respondent.*[1]

[1]Reported in 24 P. (2d) 99.

*McCarthy & Edge, H. E. T. Herman,* and *Turner, Nuzum & Nuzum,* for appellants.

*Cannon, McKevitt & Fraser, Lawrence H. Brown,* and *H. Earl Davis,* for respondent.

MILLARD, J.—A road known as the "High drive" runs along the brow of a very steep hill in the city of Spokane. On July 16, 1930, shortly after eight p. m., and while it was still daylight, an automobile owned by E. F. Hogan and operated by the owner's wife, Theresa Hogan, left that road, ran over the brink of the hill, and plunged downward a distance of approximately one thousand feet. Mrs. Hogan was killed. Two of the occupants (Mary Hart and her minor daughter Eileen Hart) of the automobile were seriously injured.

E. F. Hogan was made defendant in each of two actions growing out of that accident. One was instituted by the marital community composed of Theodore and Mary Hart to recover for personal injuries sustained by Mrs. Hart and to recover for expenses incurred by plaintiffs for medical attention for their minor daughter, Eileen. The other action was brought for the minor by her guardian *ad litem* to recover for personal injuries sustained by the minor. The trial of the two causes (they were consolidated for trial and appeal) to a jury resulted in verdicts of ninety-five hundred dollars and fifteen thousand dollars, respectively, in favor of the parents and the minor.

The trial court expressed the view that Mrs. Hart and her daughter were guests of Mrs. Hogan and were, therefore, under the host-guest rule, not entitled to recover, as they failed to show "by the preponderance of the evidence that the accident was the result of gross negligence on the part of the host." The court also stated that the rule enunciated in *Jones v. Harris,* 122 Wash. 69, 210 Pac. 22, precluded recovery, as the complainants failed to establish by the preponderance of the evidence the allegation that the husband was negligent in permitting his wife, with knowledge that she was inexperienced, reckless and incompetent in the handling and operation of automobiles, to use his automobile at the time in question.

Motion for judgment notwithstanding the verdict was granted in each of the two causes. The order granting that motion also granted the defendant's motion for a new trial, to become effective in the event that "the order granting the motion for judgment notwithstanding the verdict shall thereafter be reversed, vacated or set aside in the manner provided by law." Plaintiffs appealed.

The facts are as follows: Respondent and his wife,

to whom several children had been born, expected another blessed event on June 15, 1930. By reason of his business—traveling salesman—respondent was absent from his home in Spokane approximately two-thirds of the time. It was necessary that respondent be absent from his home during the trying enceinte period. He was anxious to employ some one as a companion for his wife, who was very nervous and restless. Two employes proved unsatisfactory. Mr. Hogan testified:

"Well, we found it awfully hard—we tried very hard to get somebody to stay with my wife. We tried out two, and they were not suitable at all, so my wife suggested that she would have Miss McDonald come."

Miss McDonald was a graduate nurse of thirty years' experience. She could not go to Spokane, but suggested that Mary Hart, the mother of ten children but not a graduate nurse, be requested to accept the role of companion to Mrs. Hogan. Mrs. Hart and Miss McDonald were sisters. Mrs. Hogan, their cousin, had been adopted by the parents of Miss McDonald and Mrs. Hart and raised in that family.

Mr. Hogan arranged for Mrs. Hart, who resided in Winnipeg, Manitoba, to be with his wife during her confinement. He telegraphed fifty dollars to Mrs. Hart, and urged her to hasten her departure for Spokane because of Mrs. Hogan's condition. Mrs. Hart and her minor child, Eileen Hart, arrived in Spokane June 15, 1930, one month and one day prior to the accident out of which these actions arose. While Mrs. Hart's status was, in fact, that of companion and nurse to Mrs. Hogan, the record does not disclose what compensation Mrs. Hart was to receive for her services.

On July 16, 1930, Mrs. Hogan was nervous and irritable. For several nights, her sleep had not been continuous. More than a month had elapsed since she

expected the baby to be born. A five-passenger automobile sedan owned by the respondent had been left by him in his garage at his residence, and was used at all times by Mrs. Hogan for her convenience and pleasure and for the convenience and pleasure of her guests.

On July 16, 1930, about eight p. m., and while it was still daylight, Mrs. Hogan suggested that she and Mrs. Hart go for a ride. Mrs. Hogan and her daughter Alice sat in the front seat of the respondent's automobile. Mrs. Hart, her daughter Eileen and Mrs. Hogan's son sat in the rear seat, as they had previously done when automobiling with the Hogans. On this occasion, Mrs. Hogan insisted that her daughter sit in the rear seat, and that Mrs. Hart sit behind the steering wheel on the front seat with Mrs. Hogan sitting on the right side of the front seat. It was the purpose of Mrs. Hogan to teach Mrs. Hart, who knew nothing about an automobile, how to operate a car.

Mrs. Hogan started the car. Mrs. Hogan held the wheel and steered the car down Jefferson street toward the business section of the city, until they came to a steep hill, and then over to the ''High drive,'' which is described in the first paragraph of this opinion. When they came to the grade leading down into the city, Mrs. Hart wanted to get out of the car; she did not want to be in the car while it was driven down the hill. Mrs. Hogan turned the car around and went south back up the hill, coming out on Twenty-ninth avenue, an easterly and westerly avenue which joins, but does not extend beyond, the ''High drive.'' When Mrs. Hart found they were on the ''High drive,'' she again wanted to get out of the automobile. Her wishes were disregarded by Mrs. Hogan, who continued to drive the car a short distance and then asked Mrs. Hart to take the wheel. It should be remarked in passing that

the trip, from the commencement of the ride until its sad termination, consumed only five to ten minutes.

Mrs. Hart guided the car a distance of three or four yards to the left (the safe side of the road) into some bushes and insisted on getting out of the car. (At that time, the car was in a safe place. The entire width of the road lay between the line of travel on which the car was proceeding and the dangerous edge of the cliff.) Again the wishes of Mrs. Hart were disregarded by Mrs. Hogan, who got excited, took the wheel, made a quick turn sharply to the right and steered the car directly over the high bank. Mrs. Hogan died prior to her husband's return from California via aeroplane. Mrs. Hart and her daughter were seriously injured.

A motion for judgment notwithstanding the verdict involves no element of discretion, and should not be granted unless it can be said, as a matter of law, that there is neither evidence nor reasonable inference from evidence to sustain the verdict. *Allen v. Landre,* 120 Wash. 171, 206 Pac. 845; *Lydon v. Exchange National Bank,* 134 Wash. 188, 235 Pac. 27; *Reynolds v. Morgan,* 134 Wash. 358, 235 Pac. 800.

One who furnishes an automobile for the use of his family is liable to a third person for injuries sustained as the result of the negligence of a member of the family in the operation of the automobile for such member's pleasure. In *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 135 Pac. 821, 50 L. R. A. (N. S.) 59, we held that an owner of an automobile purchased for the use of his family was liable for a third person's injuries sustained by the negligence of his daughter using the car for her own pleasure with his consent, expressed or implied, since it was being used for one of the purposes for which the automobile was kept. We said:

"It seems too plain for cavil that a father, who furnishes a vehicle for the customary conveyance of the members of his family, makes their conveyance by that vehicle his affair, that is, his business, and any one driving the vehicle for that purpose with his consent, express or implied, whether a member of his family or another, is his agent."

See, also, *Allison v. Bartelt*, 121 Wash. 418, 209. Pac. 863.

We have not receded from the "family car" doctrine, under which a broad liability is imposed on the husband when his car is operated by his wife for her own pleasure. The doctrine was adopted upon the theory, as stated in *Hutchins v. Haffner*, 63 Colo. 365, 167 Pac. 966, L. R. A. 1918A, 1008, "that the wife was the husband's agent in carrying out one of the purposes for which the car was purchased and owned." The rule is the same whether the automobile is operated on the occasion in question by the wife or by some other member of the family. *Plasch v. Fass*, 144 Minn. 44, 174 N. W. 438, 10 A. L. R. 1446.

"Where an automobile was purchased for the pleasure of the owner's family, it is not essential to the owner's liability that he be enjoying the journey when an injury is occasioned to another traveler from the negligent operation of the machine. The owner may be liable for the negligence of his child or other member of the family who is driving the car for the convenience or pleasure of other members of the family. . . . In order that the owner may be held liable, the operation of the machine must be in furtherance of his business or welfare. The term 'business,' as thus used, is not confined to an undertaking conducted for money profit. It may embrace any benefit which may inure to the owner. The 'business' of the owner in such a case is the furnishing of pleasure to his family, and the driver is acting for him in the scope of his 'business' when he is driving the machine for such purpose. . . .
"The person upon whom it is sought to fasten lia-

bility under the 'family car' doctrine must own, provide, or maintain an automobile for the general use, pleasure and convenience of the family. Liability under this doctrine is not confined to owner or driver. It depends upon control and use. A widow, wife or mother may be liable as well as a husband or father.

"In order to bring a case within this rule, it must be shown that the car was, in fact, a family pleasure car. But the mere fact that a car is purchased and used for business purposes does not prevent its coming within the 'family car' doctrine, where it is also used for family pleasure. . . .

"The family group is not necessarily confined to persons related to the owner. It embraces all the members of the collective body of persons living in his household, for whose convenience the car is maintained and who have authority to use it." Huddy, Automobile Law, Vol. 7-8 (9th Ed.), § 125, pp. 320-326.

The question of liability of an owner of an automobile for acts of borrower (bailee) of that automobile was presented in the case of *Jones v. Harris,* 122 Wash. 69, 210 Pac. 22. The rule there enunciated is not applicable to the facts in the present case, which falls within the "family car" doctrine—the rule of *respondeat superior.* In *Jones v. Harris, supra,* we held that the owner of an automobile who lends it to another is not liable for the latter's negligent driving unless he was so incompetent as to make the same a dangerous instrumentality in his hands, and the owner knew of such incompetency. See, also, Huddy, Cyc. Automobile Law, Vol. 7-8 (9th Ed.), § 118, p. 301. Manifestly, *Jones v. Harris, supra,* is not in point.

The relationship of host and guest does not exist between the operator of an automobile and an occupant of that automobile if such occupant is being carried for the benefit or in the business of the operator, or for the benefit or in the business of the operator's principal. A woman's nurse or companion, under

the circumstances herein related, is not that woman's guest. When a wife operates the family car for her own pleasure, that car (which was furnished by the husband for that purpose) is being operated by the wife in the business of the husband by the wife as the husband's agent. If, on such automobile trip, the wife is accompanied by her nurse or companion, as in the case at bar, that nurse or companion is being carried for the benefit of the wife and of her principal, the husband. The nurse or companion is not a gratuitous passenger, therefore she is not required to show gross negligence to recover for injuries inflicted by the host.

In *Dahl v. Moore,* 161 Wash. 503, 297 Pac. 218, we held that, where the passengers are being carried for the benefit of the operator of the automobile and for the benefit of the operator's principal, though the passengers are carried gratuitously, the rule of gross negligence governing the relationship of host and guest does not apply; that the principal and his agent operating the automobile are liable for want of ordinary care. In that case, the plaintiffs, as prospective purchasers, were being carried gratuitously by a real estate brokerage concern whose agent was driving the automobile for the purpose of viewing real estate offered for sale, when both the concern and its agent were to benefit from the venture if a sale was effected. The plaintiffs brought suit for personal injuries sustained as a result of the negligence of the operator of the automobile. We said—and that case is not distinguishable in principle from the case at bar—

"While the status involved here was not precisely that of a paid carrier, it was similar to it. The corporation sent Mrs. Moore to transport these parties to view its property. Mrs. Moore, while not a public carrier, was carrying these parties for her intended profit, and that of her employer. The riders in the car were being carried for their benefit.

"Whether this constituted them co-venturers under our decisions, or not, it is clear that their relations were not those of host and gratuitous passengers. The conclusion inevitably follows that the rule of gross negligence being necessary for injuries inflicted upon them in their person or property by the negligence of the driver, is not applicable."

See, also, *Kruy v. Smith,* 108 Conn. 628, 144 Atl. 304, to the effect that the word "guest" as used in a statute barring recovery for injuries to one being transported by the owner or operator of an automobile as a guest does not include persons carried for the mutual benefit of both the passenger and the operator or owner of the automobile.

Applying the foregoing principles to the facts in the case at bar, it is patent that the trial court erred in granting the motions for judgments notwithstanding the verdicts.

Mrs. Hart and her twelve-year-old daughter Eileen were not automobile guests of the operator, Mrs. Hogan. Mrs. Hart, as Mrs. Hogan's nurse and companion, was carried for the benefit of Mrs. Hogan and Mr. Hogan. The minor daughter, in the custody of her mother, was an involuntary occupant of the automobile. She had no option other than to accompany her mother. There was no one at the Hogan home with whom to leave her and Mrs. Hogan's two children. The appellants were not required to show, as the trial court stated, "by the preponderance of the evidence that the accident was the result of gross negligence on the part of the host."

The automobile operated by Mrs. Hogan was furnished by the husband for the use of his family. Immediately prior to and at the time the automobile ran over the brink of the hill, Mrs. Hogan was operating that automobile as her husband's agent in carrying out one of the purposes for which the car was purchased

by the husband. Mrs. Hogan was driving the automobile for her own pleasure and for the pleasure of her children, and while so operating the automobile, Mrs. Hogan was acting for her husband in the scope of his business.

*Jones v. Harris, supra,* is not in point. It was not essential to allege and prove that the husband was negligent in permitting his wife, with knowledge that she was inexperienced, reckless and incompetent in the handling and operation of automobiles, to use his automobile at the time in question. However, there was evidence (its verity was established by the verdicts) that, with knowledge of her physical and mental condition, the husband entrusted the car to his wife. Mrs. Hogan was an experienced automobilist. Doubtless the jury inferred—and that inference is reasonable— from the evidence respecting her mental and physical condition that Mrs. Hogan, no matter how long her experience prior thereto as an automobilist, at the time in question was not competent to operate an automobile. Such inference was buttressed by the testimony of the manner in which she grasped the steering wheel, swerved the car, and plunged to her death. There was sufficient evidence to show that it was unsafe at that time, and that her husband knew it, to entrust an automobile to Mrs. Hogan.

Counsel for respondent contend that the automobile was community property, and, as the tort-feasor is dead, the appellants are precluded under the rule announced in *Bortle v. Osborne,* 155 Wash. 585, 285 Pac. 425, 67 A. L. R. 1152, from maintaining the action against the surviving husband. By his answer, the respondent admitted the allegation in each complaint that he was the owner of the automobile. At the time of the trial, respondent endeavored to amend his answer by alleging that the automobile was the com-

munity property of the respondent and his wife. The trial court decided that respondent had a right to amend his answer, but that the appellants were entitled to a continuance. Counsel for respondent elected to proceed on the pleadings as made, in which it stood admitted that the car belonged to respondent individually. The question can not now be raised in this court.

Our conclusion upon the points discussed disposes of the case. Other points urged by appellants and respondent have been considered, but they do not merit discussion which would extend this over-long opinion.

The judgments are reversed, and the causes remanded for new trial.

HOLCOMB and MITCHELL, JJ., concur.

BEALS, C. J., and TOLMAN, J., concur in the result.

