[No. 10721. Department One. May 7, 1913.]

CHARLES H. LUDBERG, *Appellant*, v. S. BARGHOORN, *Respondent*.[1]

MASTER AND SERVANT—INJURY TO THIRD PERSONS—SCOPE OF EM-PLOYMENT—EVIDENCE—SUFFICIENCY. In an action for injuries sustained by a pedestrian, struck by defendant's automobile, the evidence establishes beyond controversy that defendant's servant was not acting within the scope of his employment, but had borrowed the automobile for an errand for his father, where it was uncontradicted that defendant's wife let the servant take the car on the request of his father to bring a doctor, and that after returning the doctor to his apartments, the servant took a lady friend to catch a street car, and while returning from that trip ran over the plaintiff; notwithstanding the testimony of two witnesses to a conversation held with them by the defendant, wherein the defendant, in investigating the accident, according to one of the witnesses, stated that his boy had "fetched a friend home on his way back" and, according to the other witness, stated "I sent the boy up to Ninth and Sherman streets with this friend of mine."

SAME—INJURY TO THIRD PERSON—LIABILITY—ACTS OUTSIDE SCOPE OF EMPLOYMENT. The owner of an automobile is not liable to one who was run over by his servant while returning from a personal errand for the servant's father, to whom defendant's wife had given permission to use the machine; since he was acting outside the scope of his employment.

SAME—SCOPE OF EMPLOYMENT—DIRECTION OF VERDICT. In an action for injuries sustained when plaintiff was run over by defendant's automobile, driven by his servant, it is the duty of the court, under Rem. & Bal. Code, § 340, to direct judgment for the plaintiff, where it is shown conclusively without substantial dispute that the automobile was not being used upon defendant's business but upon the business of another.

Appeal from a judgment of the superior court for Spokane county, Yakey, J., entered April 26, 1912, upon the verdict of a jury rendered in favor of the defendant by direction of the court, in an action for personal injuries sustained by a pedestrian struck by an automobile. Affirmed.

[1]Reported in 131 Pac. 1165.

*Dan Danielson* (*Heber McHugh*, of counsel), for appellant.

*Charles P. Lund*, for respondent.

MOUNT, J.—Plaintiff brought this action to recover for personal injuries. Upon the trial of the case to a jury, after the evidence was all submitted, a challenge to the sufficiency of the evidence was interposed by the defendant. The trial court sustained this challenge, and directed a judgment to be entered in favor of the defendant. The plaintiff has appealed.

The facts are as follows: On May 2, 1911, the plaintiff was run over and injured by an automobile belonging to the defendant. It was driven at that time by one Byron Raney. The evidence tended to show that the automobile was being driven at the time of the accident at an excessive rate of speed, in the city of Spokane; and while the plaintiff was passing a standing street car, he was struck by the automobile. The driver, Byron Raney, had been in the employ of the defendant for some time. His duties were to care for the defendant's lawn, do chores around the house, and keep the automobile clean. He sometimes drove the automobile for Mrs. Barghoorn. Upon the day of the injury to plaintiff, Byron J. Raney, who was a near neighbor of the defendant, requested the use of the defendant's automobile for the purpose of sending for a doctor to attend his daughter, who was critically ill. Byron J. Raney is the father of Byron Raney, who was employed by the defendant. Byron J. Raney, the father of the boy, testified, that on that day he was unable to locate the doctor he desired; that he went over to the defendant's house, who lived the next place east, and requested Mrs. Barghoorn to let his son, Byron Raney, take the automobile for the purpose of looking up the doctor. Mrs. Barghoorn consented that Mr. Raney's son should take the automobile for that purpose. The young man took the automobile and went to the doctor's office where he found the·

doctor. He took the doctor in the automobile to his father's house. Thereafter he took the doctor to the doctor's apartments in the city, and on his return met a lady friend upon the street. He took this lady in the automobile to catch a street car which she had missed. They caught the street car several blocks away, and the young man then started to return with the automobile to the garage. On his way back, he ran over the plaintiff.

Mrs. Barghoorn testified that, at the request of Byron Raney's father, she loaned him the automobile for the purpose of going for the doctor. The defendant testified that he did not know anything about the accident until after it had occurred. The lady friend of Byron Raney also testified to substantially the same facts, with reference to being invited to ride in the automobile, as were given by Byron Raney. She also testified that she did not know the defendant or his wife at that time. The doctor also testified that the boy came for him with the automobile, took him to his father's house to see the sick sister, and then took him to his apartments.

The evidence established beyond controversy that, at the time of the injury to the plaintiff, the automobile which was driven by Byron Raney was being driven, not for the defendant, but for Byron J. Raney, and that the driver was not then in the employment of the defendant or upon the business of the defendant, but he was upon an errand solely for his father.

The only attempt in the record to dispute this fact were statements made by the defendant sometime after the accident, under circumstances substantially as follows: The defendant, after learning of the accident, visited the place of the accident and had a conversation with two firemen whose station was near the place of the accident, for the purpose of learning the facts in regard thereto. One of these firemen, named Wood, testified that the defendant came to the fire station and inquired about the accident, and that he and

another man by the name of Donaldson went to the scene of the accident with the defendant and showed him how the accident occurred; that he told Mr. Barghoorn about the rate of speed the automobile was going. The witness Wood then testified as follows, referring to Mr. Barghoorn, the defendant:

"He said he was the owner of it (the automobile) and he said that his boy could not have got time to have got up speed from the corner if he was going at the rate of speed that we thought he was going at the time he hit the man. He said that his boy had fetched a friend home and was on his way back."

"A. The conversation was about the speed that the boy could have got up on his machine. He said that he had only come up to fetch a friend up to the corner and from that corner to our corner would not be time to get up the speed. Q. He said his boy? A. Yes, sir, as I first understood his reference to his son, but they told me not. Q. That is when he said his boy? A. Yes, sir, his boy."

Mr. Donaldson, the other fireman, testified to this conversation as follows:

"Well the gentleman asked the party who I was with, one of the boys at the station there, Mr. Woods, asked him about how fast the machine was running. Mr. Woods said he thought about thirty or thirty-five miles an hour and then this gentleman said I don't think the machine could have been running that fast, because, he said, I sent the boy up to Ninth and Sherman Streets with this friend of mine and I don't think the machine could have gotten up that much speed before he got back to Eighth."

This was the only evidence in the record which has any tendency to dispute the fact that the driver of the automobile was on the business of his father and not in the business of the defendant.

It is argued by the appellant that this is sufficient to take the case to the jury. This evidence was disputed by the defendant, who testified that he made no such statements. It is apparent from the statements of these witnesses that they

misunderstood or misconstrued the conversation they had with the defendant upon that occasion, because Mr. Wood said that the conversation was that "his boy had fetched a friend home and was on his way back," while Mr. Donaldson testified that the defendant said, "I sent the boy up to Ninth and Sherman streets with this friend of mine;" while the evidence of the defendant was to the effect that the driver of the machine was taking a lady friend of his (the boy's) home. It is undoubtedly a very easy matter to misconstrue or misunderstand statements of the kind here referred to. It is apparent, we think, that there is no substantial evidence here to dispute the fact that the errand upon which the automobile was run upon that day was not an errand of the defendant, but was an errand of the driver personally, or of the driver's father, who had obtained the use of the automobile for his own private purpose.

Jones on Evidence, § 297, in referring to this class of evidence says:

"It is a familiar rule that verbal admissions should be received with caution and subjected to careful scrutiny, as no class of evidence is more subject to error or abuse. Witnesses having the best motives are generally unable to state the exact language of an admission, and are liable, by the omission or the changing of words, to convey a false impression of the language used."

This court has frequently held that, before a verdict can be sustained, it must be supported by substantial proofs: *Pederson v. Seattle Consol. St. R. Co.*, 6 Wash. 202, 33 Pac. 351, 34 Pac. 665; *Guley v. Northwestern Coal & Trans. Co.*, 7 Wash. 491, 35 Pac. 372; *Comegys v. American Lumber Co.*, 8 Wash. 661, 36 Pac. 1087.

We are of the opinion that the evidence of these two witnesses does not dispute the fact that the boy was on an errand for his father, or even rise to the dignity of an admission on the part of the defendant that the driver was on an errand for the defendant.

In *Jones v. Hoge*, 47 Wash. 663, 92 Pac. 433, 125 Am. St. 915, 14 L. R. A. (N. S.) 216, we held that the owner of an automobile is not liable to one who was run over by his incompetent chauffeur, where the machine was operated without the knowledge or authority of the owner on a personal errand of the servant; and many authorities are there cited sustaining this rule.

The fact that the automobile was admitted to belong to the defendant, and that the driver of the automobile was in the employ of the defendant, was sufficient to put the defendant upon proof that the automobile was not used in his business or for his employment, has been held in a number of cases. *Knust v. Bullock*, 59 Wash. 141, 109 Pac. 329; *Kneff v. Sanford*, 63 Wash. 503, 115 Pac. 1040; *Burger v. Taxicab Motor Co.*, 66 Wash. 676, 120 Pac. 519.

But where upon the defense it is shown conclusively and without any substantial dispute that the automobile was not being used at the time of the injury in the defendant's employment or upon his business, and was being used by some other person on business of his own and without any reference to the business of the owner, it becomes the duty of the court to direct the judgment under Rem. & Bal. Code, § 340. We think the trial court, therefore, properly directed a judgment in favor of the defendant.

The judgment is affirmed.

CROW, C. J., PARKER, GOSE, and CHADWICK, JJ., concur.