[No. 16477.   Department One.   March 2, 1922.]

FRANK F. SAVAGE et al., Respondents, v. D. P. DONOVAN et al., Appellants.[1]

MASTER AND SERVANT (174, 182)—INJURY TO THIRD PERSONS—SCOPE OF EMPLOYMENT—EVIDENCE—SUFFICIENCY. The owner of an automobile is not liable for injury to a person caused by the negligence of one driving the car when the latter is not using it at the time in the employment, or upon the business, of the owner, but on business or pleasure of his own without any reference to the business of the owner; and the presumption that he was using it in the business of the owner is rebutted, as a matter of law, where a friend of the owner volunteered to take the car back to the garage, but instead of doing so drove about for his own pleasure.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered February 2, 1921, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for damages sustained in an automobile collision. Reversed.

*Merritt, Lantry & Merritt*, for appellants.
*Crandell & Crandell*, for respondents.

MITCHELL, J.—This action was brought by Mr. and Mrs. Frank F. Savage against Mr. and Mrs. D. P. Donovan to recover for personal injuries and damage to their automobile, occasioned in a collision with an automobile belonging to the defendants. It was alleged the collision occurred because of the negligence of the

[1]Reported in 204 Pac. 805.

driver of the Donovan car. The verdict and judgment were for the plaintiffs. The defendants have appealed.

On the appeal, the negligence of the driver of the Donovan car is not questioned or denied. The appellants rely for a reversal upon the contention that the evidence fails to show any liability against them, a claim seasonably insisted upon at the trial by motions challenging the sufficiency of the evidence and for a directed verdict in their favor.

The accident happened on a street in the city of Spokane. The appellants lived at the Helen Apartments, on Adams street, and kept their car at a public garage on First avenue, three blocks north of the Helen Apartments and about two hundred feet west of the intersection of Adams street and First avenue. It appears that W. B. Johnson and wife were friends of the Donovan family, and that on the day of the accident, at the request of Mrs. Donovan, Mr. Johnson got the car from the garage, whereupon Mrs. Donovan, her two daughters, and Mr. and Mrs. Johnson used the car in a drive about and beyond the city for several hours, returning in the afternoon. Upon returning to the Donovan home, the undisputed evidence of Mrs. Donovan shows that Mr. Johnson said: "Mrs. Donovan, I will take the car back," to which she answered: "All right, put it in the garage," and his testimony was that, upon leaving the Helen Apartments, he was to take the car to the garage. Mrs. Johnson stopped for a short while with Mrs. Donovan and then returned to her home. Upon leaving his wife and the Donovans at the home of the latter, Johnson proceeded in the car alone north on Adams street to First avenue, and instead of going to the garage (two hundred feet west) he traveled east five blocks, thence north on Post street about two blocks and parked the car across the street from the Whitten Block, in which the Johnsons resided,

where it remained for an hour or an hour and a half, during which time, as he testified, he "just walked around town." At the time of the trial, some two years after the accident, he didn't remember any particular place he was aiming to go to nor any place visited by him, other than a soda fountain nearby, and that he was not engaged in any business of any kind for either Mr. or Mrs. Donovan. Upon resuming his drive, instead of going back towards the garage, he went further north to Riverside avenue, thence west and southwesterly along that avenue to a point near but still north of the garage, where the collision complained of happened. It appears that, on two or three prior occasions, Mr. Johnson, with some member of the Donovan family, or alone, but at the request of the latter, had taken the car from the garage to be used by himself and wife and the Donovans, upon invitations of the latter to join them in a ride.

Upon these facts, we think the contention of appellants that, at the time of the collision, Johnson was outside and beyond the scope of his employment or service for the Donovans; that he was acting without authority from them and doing nothing to further their business, and that it must be so decided as a matter of law, will have to be sustained. We have held that, when it is shown the vehicle doing the damage belonged to the defendants at the time of the injury, that fact establishes *prima facie* that the vehicle was then in the possession of the owner, and that whoever was driving it was doing so for the owner. *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 135 Pac. 821, 50 L. R. A. (N. S.) 59; *Ludberg v. Barghoorn,* 73 Wash. 476, 131 Pac. 1165. The presumption, however, is a rebuttable one and exists only so long as there is no substantial evidence to the contrary. *Birch v. Abercrombie,* and *Ludberg v. Barghoorn, supra; Babbitt*

*v. Seattle School District No. 1,* 100 Wash. 392, 170 Pac. 1020.

That such substantial and conclusive evidence was given in this case, we think is beyond successful dispute. It is argued by the respondent, however, that "Johnson testified that he had taken the car down town, had parked it for some time, and was then returning to the Helen Apartments, where the Donovans lived at the time, so that there is not the clear and direct evidence that the agent, Johnson, was acting beyond the scope of his employment in the premises." And it is contended that this of itself was enough to take the case to the jury. But we do not so understand the proof. It refers to what he said of his conduct upon leaving the place at which he had parked the car, and is as follows:

"Q. And where did you start to then? A. Well, I started back up to the apartment. Q. Going to take the car up to the apartment? A. Well, that is where the folks was, and sometimes I would drive back up there. Q. Well, when you left the Helen Apartments, where did you start to take the car then? A. I started to take it to the garage."

Now it seems to be clear that the testimony about driving back up to the apartments shows he was not in the service of the Donovans, and was suggested or thought of in connection with his conduct at some prior time while manifestly acting under a self-imposed license to do as he pleased with the car while engaged in his own pleasure, rather than as agent for or engaged in the service of the Donovans. The question here is what was he doing or directed to do on this occasion. Both he and Mrs. Donovan say he was to take the car back to the garage from the Helen Apartments. There is no other testimony. That was his only commission or authority. After starting upon

that service and from a point close to the garage, he made a marked and radical deviation to other parts of the city, where he remained more than an hour engaged in his own pleasure and pastime. How much out of the way may one go and how much time may he spend, if any, not in the master's service, and yet the master be held liable? In cases of this general kind a deviation in the line of travel is often troublesome in the determination of essential and ultimate facts, but never so if it be true, as here, that the deviation is marked and continuous and in no way called for in the execution of the master's business, but indulged in only for the personal pleasure of the servant.

Upon consideration of the whole case, we adopt the reasons and reach the same conclusion expressed in the case of *Ludberg v. Barghoorn, supra,* as follows:

"But where upon the defense it is shown conclusively and without any substantial dispute that the automobile was not being used at the time of the injury in the defendant's employment or upon his business, and was being used by some other person on business of his own and without any reference to the business of the owner, it becomes the duty of the court to direct the judgment under Rem. & Bal. Code, § 340."

Reversed, with directions to the lower court to enter a judgment of nonsuit and dismissal of the action.

PARKER, C. J., FULLERTON, TOLMAN, and BRIDGES, JJ., concur.