[No. 32425. Department One. October 29, 1953.]

HELEN R. GRAY, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al.*, *Respondents*.[1]

[1]Reported in 262 P. (2d) 533.

*F. W. Loomis,* for appellant.

*The Attorney General* and *Henry Heckendorn, Assistant,* for respondent department of labor and industries.

*Donley & Ingram,* for respondents Marsh *et al.*

WEAVER, J.—The question presented is whether the record contains sufficient evidence to require submission of the case to a jury.

Plaintiff appeals from a judgment of dismissal entered after a motion for a nonsuit was granted.

We are governed by the rule that such a motion admits the truth of the evidence of the party against whom the motion is made, and all inferences reasonably drawn therefrom, and requires the evidence be interpreted most strongly against the challenger, and in the light most favorable to the opposing party. *Cochran v. Harrison Memorial Hospital,* 42 Wn. (2d) 264, 254 P. (2d) 752 (1953), and cases cited.

Thus considered, the record discloses the following:

Plaintiff was employed by the Hoquiam Cedar Company, a partnership, as cook at their logging camp. The camp was at the end of a private road which intersected U. S. highway 101, ten to fourteen miles south of Quinault, Washington. This junction was about thirty-five miles north of Hoquiam.

Plaintiff lived at the camp. She was the only cook employed, although at the time involved, her mother was there to help her and to take her place when she was gone. Plain-

tiff's hours of employment were indefinite. She usually arose around four a. m., prepared lunches for the men to take with them, and served breakfast between five-thirty and six a. m.

On September 11, 1951, plaintiff needed groceries to prepare the evening meal and breakfast the next morning. About ten-thirty a. m., she asked Mr. Marsh, one of the partners, for permission to take a pickup truck to go to Quinault for the supplies. She had never used this truck before. Permission was given. She left in the truck to go to the grocery store at Quinault about two p. m. The groceries were purchased and placed in the truck.

On her way back to camp, she met her brother (who was also in the employ of the company) at the intersection of the two roads, about three-thirty p. m. As a result of their conversation, instead of turning west on the private road leading to the camp, she and her brother drove south to Hoquiam and then east to Aberdeen. Her mother was at camp to take her place if she was not there. It was not absolutely necessary to have the groceries at camp for the evening meal.

Plaintiff drove her brother to the office of the company in Aberdeen, where he drew ten dollars. She waited for him in the truck for thirty to forty-five minutes while he was in a tavern. This was about five p. m. The brother met friends, who invited him to their place. As a result, plaintiff drove her brother to the home of the friends near Montesano, Washington. There was a party. Plaintiff did not drink at the party.

At approximately four a. m., the following morning, plaintiff and her brother started back to camp in the truck. Plaintiff estimated that it would have taken her an hour and fifteen minutes to reach the camp. It was plaintiff's purpose to reach camp in time to prepare breakfast and lunches for the men.

Between Montesano and Aberdeen, plaintiff lost control of the truck and it overturned. She was injured. The accident occurred several miles east of Aberdeen and about

forty miles from the junction of the camp road with U. S. highway 101.

The supervisor of industrial insurance denied plaintiff's claim "for the reason that at the time of the injury the claimant was not in the course of his employment." The board of industrial insurance appeals sustained the order of the supervisor. Upon appeal to the superior court, a motion for nonsuit was granted.

■ Our problem is not to weigh the evidence, but to determine whether the evidence produced or any reasonable inference therefrom is, as a matter of law, sufficient to justify, though not to compel, a verdict for plaintiff. *Nawrocki v. Cole,* 41 Wn. (2d) 474, 249 P. (2d) 969 (1952).

In condensed form, the evidence most favorable to plaintiff is this: (a) she was driving her employer's truck with permission; (b) the truck contained supplies, which she had been authorized to purchase, necessary to her employer's business; (c) she was on her way to the place of her employment to perform the duties for which she had been employed.

In spite of the rule which governs the trial court when considering the motion, and this court when considering the appeal, neither court is required by the rule to disregard verities. Between three-thirty p. m. of the one day and four a. m. of the next, there is no evidence that appellant was about her master's business. In fact, her own testimony is to the contrary. She was upon a personal excursion of her own choice. Her trip south was a deviation. It was not a detour.

As a matter of law, had she resumed her employment and was she acting within the scope thereof, at the time of the accident?

Under the statute:

"Each workman who shall hereafter be injured *in the course of his employment* . . . shall receive out of the accident fund compensation in accordance with the following schedule . . ." (Italics ours.) Rem. Supp. 1949, § 7679 [*cf.* RCW 51.32.010].

The problem of defining the phrase "in the course of his employment" is one which is presented frequently in determining the liability of a master for the tort of his servant. An accurate analogy, so far as defining the phrase is concerned, is the situation where a servant, having deviated from his master's business, returns to it. At what time and place does the master's liability resume? The authorities have been collected in an annotation "Time and place of resumption of master's responsibility" appearing in 122 A. L. R. 858, 870, and prior annotations cited.

Restatement, Agency, § 234:

"Conduct is within the scope of employment only in a locality not unreasonably distant from the authorized area.

"*Comment*: a. . . . In all cases, it is a question of degree whether or not the difference in place is so great as to make the act done substantially different from the act authorized. If the driving is an independent journey as distinguished from a mere detour, the servant is upon an enterprise of his own and the master is not liable for his conduct during the trip. . . .

"*Comment*: c. Where the area within which the servant is to act is very limited, a slight departure from it may be effective to remove the act from the scope of employment although, if the employment covered a large area, a greater departure would not."

Restatement, Agency, § 237:

"A servant who has temporarily departed from the scope of employment does not re-enter it until he is again reasonably near the authorized space and time limits and is acting with the intention of serving his master's business.

"*Comment*: a. . . . He cannot re-enter it, however much he desires it, until he is within the flexible limits of employment. This does not necessarily mean that he must return to the point from which he diverged when beginning to act for a purpose of his own. As he may make a detour for his own purposes without ceasing to be in the scope of employment, so in returning to the service he may re-enter the employment before reaching the limits fixed in his authorization. *On the other hand, the mere fact that his own business is over and that he intends to return to the employment or to use the instrumentalities for the master's business does not cause him to be within the scope of employment.*" (Italics ours.)

■ This court has adopted and applied the same rule in determining whether a workman was injured "in the scope of his employment." In *Hama Hama Logging Co. v. Department of Labor & Industries,* 157 Wash. 96, 101, 288 Pac. 655 (1930), this court said:

"If Spears was injured at a time when he was doing something solely for his own benefit or accommodation, he was not injured 'in the course of his employment.'

" 'The words, "in the course of the employment" relate to the time, place and circumstances under which the accident takes place. An accident arises in the course of the employment when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto.' *Case of Fournier,* 120 Me. 236, 113 Atl. 270.

" 'The controlling factor in determining whether the employee is in the course of his employment is whether at the time of the accident he was within the orbit, area, scope, or sphere of the employment.' *Danville, U. & C. R. Co. v. Industrial Commission,* 307 Ill. 142, 138 N. E. 476."

■ There is no evidence, nor can it be inferred from any evidence, that, at the time of the accident, appellant was at a place where she might reasonably have been in the performance of her duties, or engaged in doing something incidental thereto. See *Hill v. Department of Labor & Industries,* 173 Wash. 575, 24 P. (2d) 95 (1933); *Carter v. Department of Labor & Industries,* 183 Wash. 86, 48 P. (2d) 623 (1935).

The judgment is affirmed.

GRADY, C. J., MALLERY, HILL, and OLSON, JJ., concur.