[No. 36159.   Department Two.   May 23, 1963.]

PETER L. BALISE, JR., *Individually, as Guardian ad Litem, and as Administrator, Appellant,* v. JAMES F. UNDER-WOOD, *Defendant,* MORRISON-KNUDSEN CO., INC., *Respondent.*\*

---

\* Reported in 381 P. (2d) 966.

*Durkan & Durkan, Wolfstone & Piehler,* and *Barbara Ohnick,* for appellant.

*Allen, DeGarmo & Leedy,* by *Stuart G. Oles,* for respondent.

HAMILTON, J.—At about 3 p.m., on January 23, 1960, a head-on collision occurred on Stevens Pass Highway, approximately 3 miles east of Gold Bar and 15 to 17 miles west of Skykomish, Washington, between automobiles driven by plaintiff Peter L. Balise, Jr. (hereafter referred to as appellant), and James F. Underwood (hereafter referred to as Underwood). Appellant, individually, as guardian ad litem for his two minor sons, and as administrator of his deceased wife's estate, initiated this action alleging negligence on the part of Underwood and seeking damages for personal injuries and wrongful death. Appellant named as defendants Underwood and his employer Morrison-Knudsen Co., Inc. (hereafter referred to as respondent), alleging that, at the time of the accident, Underwood was "driving his automobile . . . in the course and scope of his employment as a mechanic for Morrison-Knudsen Co., Inc."

Respondent answered denying Underwood was at the time of the collision acting within the course and scope of his employment. Underwood answered denying such allegation because of insufficient information upon which to form a belief.

Respondent moved for summary judgment upon the grounds that no genuine issue of material fact existed as to the scope-of-employment issue.

Based upon the pleadings, affidavits, and depositions presented, the trial court granted the motion and dismissed appellant's action against respondent. From this order appellant prosecutes his appeal.

Review of the pleadings, affidavits, and depositions before the trial court reveal the following circumstances. Underwood, a resident of Edmonds, Washington, was employed, at an hourly wage rate, as a welder-mechanic by respondent, upon a company project located near Skykomish, Washington. He commuted by his own automobile between the jobsite and his home in Edmonds. Underwood, by his employment agreement, was required to furnish his own tools up to a certain size. He customarily kept these in his automobile, except when actually using them.

An existing union operating agreement provided, in part:

"When jobs are located outside of the city limits of Everett, . . . and when camp or board and lodging are not provided, the following additional remuneration will be paid: . . . Over 35 miles from city center—$4.50 per working day shall be paid."

Under this provision, the Skykomish project being in excess of 35 miles from Everett, Underwood received $4.50 per working day, which by union-company interpretation he was eligible to receive whether he resided in Edmonds, Everett, or Skykomish.

On the day of the accident, Underwood reported for work on the project at 6 a.m and signed off the job at 2 p.m. At the time of the accident, about 3 p.m., he was traveling west, towards Everett and Edmonds, on Stevens Pass Highway. Following the accident, tools were observed in the Underwood vehicle. Some of the tools, variously estimated as weighing up to 700 pounds, appeared to one witness to be in excess of the size required to be furnished by Underwood. A battery charger belonging to respondent also was in the automobile. Immediately following the accident and notification thereof, the project manager and Underwood's immediate supervisor went to the scene and thereafter, together with Mrs. Underwood, sought and ultimately obtained official release of the tools and equipment in the Underwood vehicle. During the course of seeking such release some representations were made relative to company ownership of some of the tools and/or equipment.

Following the accident, Underwood filed a claim for workmen's compensation alleging that, at the time of the accident, he was in the course of his employment. After initiation of this suit, Underwood's counsel served upon appellant a copy of an answer admitting appellant's allegation upon the course-of-employment issue. Underwood subsequently abandoned his workmen's compensation claim and served and filed his present answer denying for lack of information the course-of-employment allegation. Mr. and Mrs. Underwood testified on deposition to an undefined fear for Underwood's job.

During the course of discovery proceedings, appellant's counsel alleged, upon information and belief, the existence of a nonowner liability insurance policy on behalf of respondent, contending in effect that if such policy insured employees going to and from work it would be relevant upon the course-of-employment issue. Discovery was refused and the refusal confirmed by court order.

Appellant contends summary judgment to be inappropriate under the circumstances presented because, he asserts, an issue of credibility of witnesses exists. In support of this contention, plaintiff points to: (a) Underwood's action in filing and abandoning a workmen's compensation claim, and in serving and modifying his answer in this case; (b) the Underwoods' fear for Underwood's job with respondent; and (c) the representations and statements surrounding official release of the tools and equipment from the Underwood vehicle following the accident.

Respondent, on the other hand, contends these matters have been satisfactorily explained, and asserts it is otherwise amply demonstrated that Underwood, at the time of the accident, was simply an employee who, having finished his day's work, was on his way home.

We, in company with other courts and text writers, have frequently cultivated the field of summary judgment. At the expense of repetition, our disposition of this case renders another walk around the field desirable. The following principles we conceive to be well established.

(1) The object and function of the summary judgment procedure is to avoid a useless trial; however, a trial is not useless, but is absolutely necessary where there is a genuine issue as to any material fact. *Preston v. Duncan*, 55 Wn. (2d) 678, 349 P. (2d) 605.

(2) Summary judgments shall be granted only if the pleadings, affidavits, depositions or admissions on file show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Rule of Pleading, Practice and Procedure 56, RCW Vol. 0; *Capitol Hill Methodist Church of Seattle v. Seattle*, 52 Wn. (2d) 359, 324 P. (2d) 1113.

(3) A material fact is one upon which the outcome of the litigation depends. *Capitol Hill Methodist Church of Seattle v. Seattle, supra. Zedrick v. Kosenski, ante*, p. 50, 380 P. (2d) 870.

(4) In ruling on a motion for summary judgment, the court's function is to determine whether a genuine issue of material fact exists, not to resolve any existing factual issue. *Thoma v. C. J. Montag & Sons, Inc.*, 54 Wn. (2d) 20, 337 P. (2d) 1052.

(5) The court, in ruling upon a motion for summary judgment, is permitted to pierce the formal allegations of facts in pleadings and grant relief by summary judgment, when it clearly appears, from uncontroverted facts set forth in the affidavits, depositions or admissions on file, that there are, as a matter of fact, no genuine issues. *Preston v. Duncan, supra.*

(6) One who moves for summary judgment has the burden of proving that there is no genuine issue of material fact, irrespective of whether he or his opponent, at the trial, would have the burden of proof on the issue concerned. *Preston v. Duncan, supra.*

(7) In ruling on a motion for summary judgment, the court must consider the material evidence and all reasonable inferences therefrom most favorably to the nonmoving party and, when so considered, if reasonable men might reach different conclusions the motion should be denied. *Wood v. Seattle*, 57 Wn. (2d) 469, 358 P. (2d) 140.

(8) When, at the hearing on a motion for summary judgment, there is contradictory evidence, or the movant's evidence is impeached, an issue of credibility is present, provided the contradicting or impeaching evidence is not too incredible to be believed by reasonable minds. The court should not at such hearing resolve a genuine issue of credibility, and if such an issue is present the motion should be denied. 6 Moore's Fed. Prac. (2d ed.) ¶ 56.15 (4), pp. 2139, 2141; 3 Barron & Holtzoff, Fed. Prac. and Proc. § 1234, p. 134.

With the foregoing rules in mind, we turn to the issue and the circumstances presented here. Whether Underwood, at the time of the accident, was within the course of his employment indisputably presents an issue of material fact. The outcome of the litigation between appellant and respondent, to a large extent, depends upon determination of this issue.

Evidence concerning Underwood's status, at the time in question, is peculiarly within the knowledge of the respondent and Underwood. The credibility of Underwood, in his capacity as a party defendant and as an employee of the respondent, has been challenged. Explanation for abandonment of his workmen's compensation claim and for modifying the pleading initially served upon appellant's counsel, is weakened by testimony inferring a fear of losing his employment.

The extent, nature, and status of the tools and equipment transported in the Underwood vehicle at the time of the accident is in some measure uncertain.

The union-company interpretation of the operating agreement providing $4.50 as "additional remuneration" has not been presented. Upon the basis of the record it cannot be said whether such payment represents additional wages, isolation pay, payment in lieu of board and lodging away from home, travel pay, payment in lieu of company transportation, or other fringe benefit.

Concededly, at the trial the burden of proof upon the issue in question will rest with appellant. At that time, to establish his prima facie case, appellant will be required

to come forward with something more than an attack upon the credibility of adverse witnesses. However, under the circumstances as the record now stands, we do not believe the issue in question should be disposed of by summary judgment.

Accordingly, the order granting summary judgment is reversed. In doing this, we express no view upon the merits. We hold only that, under the circumstances revealed by the record as it now stands, respondent has not sustained its burden of proving there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law.

■ Appellant next contends the trial court erred in precluding pursuit of discovery proceedings revolving about a nonownership liability insurance policy purportedly insuring respondent against losses arising out of employee operation of other than company owned vehicles. Appellant relies upon the cases of *Robinson v. Hill*, 60 Wash. 615, 111 Pac. 871, and *Carlson v. P. F. Collier & Son Corp.*, 190 Wash. 301, 67 P. (2d) 842, wherein we held the existence of liability insurance to be relevant upon the issue of whether there existed, under the facts and issues as framed, a master-servant or independent contractor relationship.

We agree with respondent's counsel and the trial court that, in the instant case, the mere existence of a nonowner liability policy would not be relevant or material upon the issue of whether Underwood, at the time in question, was within the course of his employment.

If, however, the purported policy of insurance, by its terms, specifically indemnifies respondent against liability for negligence of employees, in the same category as Underwood, while driving their own automobiles between their homes and company jobsites, then such fact would appear relevant to the issue at hand. Through appropriate discovery procedures, appellant should be entitled to ascertain the existence or nonexistence of such coverage.

The case is remanded for further proceedings in accordance herewith. Costs on this appeal shall abide final disposition of the case as between appellant and respondent.

OTT, C. J., DONWORTH, FINLEY, and HUNTER, JJ., concur.