[No. 67-40675-3.   Division Three.   April 27, 1970.]

SHIRLEY FELSMAN, as *Administratrix, Appellant,* v. JOHN F. KESSLER *et al., Respondents.*

*Fredrickson, Maxey, Bell & Allison* and *Gordon · L. Bovey,* for appellant.

*E. J. Stanfill,* for respondents.

MUNSON, J.—Shirley Felsman, plaintiff and administratrix of the estate of Lawrence Felsman, appeals an order granting summary judgment.

On November 4, 1967, Lawrence Felsman was shot to death while hunting on land owned by John and Juanita Kessler, codefendants. An ensuing coroner's inquest found Felsman's cause of death to be homicide at the hands of a person or persons unknown. On April 17, 1968, plaintiff brought this wrongful death action against John Kessler, Don Keys and their respective marital communities, alleging: (1) Kessler and Keys conspired to bring about, individually and/or in concert, the death of Lawrence Felsman; and/or (2) Keys, while working within the scope of his employment by Kessler, caused decedent's death.

On May 6, 1968, Kessler moved for a summary judgment claiming no genuine issue of material fact as to liability. In support thereof, affidavits by Mr. and Mrs. Kessler were filed denying any conspiracy or agreement with Keys to effect Felsman's or anyone else's death; or that Keys was their agent, servant or employee. Hearing on this motion was initially set for May 17, 1968 but was continued until May 31, 1968.

On May 31, 1968 at 3:19 p.m., pursuant to stipulation of counsel, John Kessler was deposed. After taking the oath, stating his name and his wife's name, their address, and acknowledging that he was one of the defendants in this lawsuit, he thereafter claimed his right under the Fifth Amendment to refuse to answer any further questions on the grounds of self-incrimination. At 3:40 p.m. the same day, the trial court heard arguments on defendants' motion. Plaintiff's attorney filed an affidavit stating that witnesses interviewed by him, who knew both John Kessler and Don Keys, had disclosed to him that Don Keys was employed by John Kessler for the purpose of patrolling his land to keep off unauthorized hunters. At that time, counsel for plaintiff advised the court that he had a transcript of the coroner's inquest present with him and would file it so it could be considered by the court in ruling on the motion.

Plaintiff noted that defendant Kessler refused to answer questions during the coroner's inquest on the grounds of the Fifth Amendment, the same as he did during the deposition taken immediately prior to the hearing. The untranscribed deposition of John Kessler was offered to the court, but obviously could not be filed in that form. Plaintiff did not seek any of the remedies available to her under CR 37, nor at that time seek any relief from the trial court based upon defendant Kessler's refusal to answer the questions posed during his oral deposition.

On June 3, 1968, the court filed a memorandum opinion granting the motion for summary judgment relying on *W. G. Platts, Inc. v. Platts,* 73 Wn.2d 434, 438 P.2d 867 (1968), stating that plaintiff counsel's affidavit, even if true, did not meet the issues raised by defendants' affidavits since there was no showing of any overt acts to support the claim of conspiracy or that defendants did anything to effect the death of decedent.

On June 7, 1968, plaintiff filed with the trial court a motion for denial of application for summary judgment or in the alternative for extension of time to obtain affidavits. The extension was granted but with the trial court's reservation that it would pass upon the admissibility of the affidavits later. On June 28, 1968, plaintiff took the deposition of defendant-wife Kessler who answered in the same manner as her husband.

On July 6, 1968, plaintiff moved to strike the affidavits of both defendants Kessler based upon *Annest v. Annest,* 49 Wn.2d 62, 298 P.2d 483 (1956) wherein it was held that a witness' testimony may be stricken or his action dismissed for declining to answer a proper question upon the grounds of self-incrimination since the witness has failed to tell the whole truth as required by his oath.

On July 9, 1968, upon plaintiff's request, the depositions of both defendants Kessler, having been transcribed, were published. At this time the affidavit of H. E. Brazington was also filed. The Brazington affidavit concerned a conversation between affiant and John Kessler in Lewiston, Idaho

on June 2, 1968, 2 days after the hearing on the motion for summary judgment wherein affiant states Mr. Kessler advised him: (1) Keys was employed for the purpose of patrolling his property and preventing trespassing hunters from coming thereon and ejecting the same; and (2) he [John Kessler] and Keys had agreed it would be better if the latter disappeared so there would be one less person around to answer questions.

Defense counsel objected to any of plaintiff's subsequent affidavits being received and to the court's reconsideration of its memorandum opinion because plaintiff had not produced any of this material until after receiving the court's opinion granting the motion for summary judgment. The court struck plaintiff's affidavits filed subsequent to May 31, 1968 and requested an order be submitted in conformity with the memorandum opinion. The trial judge stated that while he had considered the transcript of the coroner's inquest (and even considered the affidavits which had been stricken) plaintiff still had not shown there was a question of material fact necessary for determination by trial. On July 24, 1968, the court entered an order granting summary judgment.

We agree with the trial judge that the attempt of plaintiff's counsel to answer defendants' motion for summary judgment by his own affidavit, in content, does not find support within the principles enumerated in *Meadows v. Grant's Auto Brokers, Inc.,* 71 Wn.2d 874, 431 P.2d 216 (1967).

■ It is the general rule that once the moving party has filed affidavits controverting the pleadings, the non-moving party can no longer rely upon his pleadings but must come forth with evidence, as long as it is available, which would justify a trial. *W. G. Platts, Inc. v. Platts, supra; Plaisted v. Tangen,* 72 Wn.2d 259, 432 P.2d 647 (1967); *Reed v. Streib,* 65 Wn.2d 700, 399 P.2d 338 (1965); Barron & Holtzoff, Federal Practice and Procedure § 1235 at 149. However, where material facts averred in an affidavit are particularly within the knowledge of the moving party,

it is advisable that the cause proceed to trial in order that the opponent may be allowed to disprove such facts by cross-examination and by the demeanor of the moving party while testifying. *United States v. Logan Co.,* 147 F. Supp. 330 (W.D. Pa. 1957); *Subin v. Goldsmith,* 224 F.2d 753 (2d Cir. 1955). See also *Hudesman v. Foley,* 73 Wn.2d 880, 441 P.2d 532 (1968); *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963). We find the elements of a conspiracy and factual knowledge concerning Keys' employment by Kessler lie within this exception.

On September 5, 1968, the court entered an order formally incorporating the coroner's inquest into the record. However, there is no question that the transcript of the testimony of the coroner's inquest was before the court at the May 31 hearing as indicated by the statement of facts. We find within that document sworn testimony contradicting defendants' affidavits both as to Don Keys being an employee of defendant Kessler and his duties, which are material facts within the complaint.

■ While the trial court in effect held there was no evidence produced by plaintiff to show the ultimate fact before the court in this case, *i.e.,* that either Keys or Kessler shot decedent, there was sufficient contradictory evidence before the court on other issues. The rule on summary judgment is not that there be no genuine issue as to the *ultimate* fact to be decided by a jury, but rather there be no genuine issue as to any *material* fact. *Regan v. Seattle,* 76 Wn.2d 501, 458 P.2d 12 (1969); *Ferrin v. Donnellefeld,* 74 Wn.2d 283, 444 P.2d 701 (1968); *Hudesman v. Foley, supra; Meadows v. Grant's Auto Brokers, Inc., supra; Leland v. Frogge,* 71 Wn.2d 197, 427 P.2d 724 (1967); *State ex rel. Bond v. State,* 62 Wn.2d 487, 383 P.2d 288 (1963); *Balise v. Underwood, supra.*

Defense counsel contends the court did not grant plaintiff's motion for additional time in which to file affidavits since it struck the affidavits filed subsequent to May 31, 1968. It would appear from the record that the trial court perused plaintiff's subsequent affidavits but did not con-

sider them as changing or as contrary to any of the factual matters before him on May 31, 1968. This is true in all instances except Mr. Brazington's affidavit which was in direct contradiction to both of the Kesslers' affidavits regarding Keys' employment and the nature of his work.

■ A memorandum opinion is not a final disposition of a matter before the trial court, nor is it an order, and until a formal order has been entered the court may change its mind. While we do not encourage or condone plaintiff's awaiting the court's ruling on the motion and then scurrying around to get affidavits and other matters before it in an attempt to change the court's mind, the fact remains that until an order is entered formally denying the motion, this avenue is available. *Nicacio v. Yakima Chief Ranches, Inc.,* 63 Wn.2d 945, 389 P.2d 888 (1964); *Chandler v. Doran Co.,* 44 Wn.2d 396, 267 P.2d 907 (1954); *Ullom v. Renton,* 5 Wn.2d 319, 321, 105 P.2d 69 (1940).

Therefore, the peculiar nature of the assertions contained in defendants' affidavits coupled with the contradictory evidence contained in the transcript of the coroner's inquest, as well as the Brazington affidavit, taken together require the order granting the motion for summary judgment to be reversed.

■ Plaintiff requests this court to strike defendants' affidavits in support of the motion for summary judgment based on *Annest v. Annest,* 49 Wn.2d 62, 298 P.2d 483 (1956), because defendants Kessler refused to answer questions propounded to them on deposition by invoking their right against self-incrimination. *Cf. Bauer v. Stern Fin. Co.,* 169 N.W.2d 850 (Iowa 1969); *Christenson v. Christenson* 162 N.W.2d 194 (Minn. 1968); *Self-Incrimination—Civil Action,* Annot., 4 A.L.R.3d 545 (1965). While the *Annest* case served as a basis for plaintiff's motion which was on file prior to July 9, 1968, there is nothing in the record before this court to evidence that it was argued or called to the court's attention. Therefore, this matter not having been considered by the trial court, will not be considered

by this court. *Webley v. Adams Tractor Co.,* 1 Wn. App. 948, 465 P.2d 429 (1970).

Judgment is reversed and the case hereby returned to the trial court for trial.

EVANS, C. J., and GREEN, J., concur.

---

Petition for rehearing denied June 26, 1970.