[No. 5281–4–II.   Division Two.   March 6, 1984.]

MARY F. HAYS, *Appellant*, v. DONALD A. LAKE, ET AL, *Respondents*.

*John L. Messina* and *Bobbee Musgrave,* for appellant.

*F. Ross Burgess,* for respondents.

WORSWICK, A.C.J.—Donald R. Lake left his employer's establishment to go to a cleaning job about 20 minutes away. More than 7 hours later, he was in an accident. He was some 6 miles beyond the jobsite (the location of which he knew), intoxicated, and headed the wrong way. He said he was going to the job but had become lost and was looking for a place to turn around. Mary F. Hays, appealing a summary judgment which dismissed Lake's employer from her personal injury action, asks us to hold that a jury issue is presented as to whether Lake was in the scope of his employment. We affirm, holding as a matter of law he was not.

The foregoing, together with the following, are the essential undisputed facts: Lake reported for work at 4:45 p.m. the previous day. He was assigned three cleaning jobs, two of which he was to do with the help of a co-worker, Roger Grover. He was given a route sheet showing job locations. Lake and Grover did some drinking while working together. They also stopped to eat between the first two jobs. After finishing the second job, they returned to the employer's place of business in downtown Tacoma. Necessary tools and materials were transferred to Lake's car. Lake left for the third job, a restaurant, at about 9:30 p.m. He knew he must be finished by 6 a.m. when the restaurant cook would arrive.

Lake's route took him past a tavern where he saw Grover's car. He stopped and imbibed with Grover. After this interruption, he again left for the job. This time he picked up some hitchhikers. He went with them to the home of one where he spent an indeterminate time drinking. On the way, he passed the jobsite. He does not know the location of the home where he drank with the hitchhikers. The accident happened at 5:45 a.m.

We are mindful that, in reviewing this summary judgment, our inquiry must be whether, drawing all reasonable inferences from the factual record in favor of the nonmoving party, reasonable minds might conclude that Lake was in the scope of his employment. *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963); *Goodpaster v. Pfizer, Inc.,* 35 Wn. App. 199, 665 P.2d 414 (1983). We conclude that, on these facts, reasonable minds could not differ.

Scope of employment must be determined upon the facts and reasonable inferences therefrom. *Sanders v. Day,* 2 Wn. App. 393, 468 P.2d 452 (1970).

> The essential considerations in drawing the ultimate inference are stated in Restatement (Second) of Agency § 228 (1958) to be as follows:
>> (1) Conduct of a servant is within the scope of employment if, but only if:
>>> (a) it is of the kind he is employed to perform;
>>> (b) it occurs substantially within the authorized time and space limits;
>>> (c) it is actuated, at least in part, by a purpose to serve the master, . . .
>> . . .
>> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.
>
> Some of the considerations for determining whether conduct is within the scope of employment are stated in Restatement (Second) of Agency § 229 (1958):
>> (2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within

the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

. . .

(i) the extent of departure from the normal method of accomplishing an authorized result; . . .

*Sanders,* 2 Wn. App. at 397.

Some employee acts, although arguably within the most broad and generous definition of the job, are so distinctly personal that they must be characterized as personal ventures (*e.g.,* a detour to the Washington coast by an individual hired to drive a car from Chicago to Seattle, *Foote v. Grant,* 55 Wn.2d 797, 350 P.2d 870 (1960); a lovers' quarrel in the employer's parking lot, *Nelson v. Broderick & Bascom Rope Co.,* 53 Wn.2d 239, 332 P.2d 460 (1958); a side trip to visit her brother and attend a party by a cook sent to purchase groceries for a lumber camp, *Gray v. Department of Labor & Indus.,* 43 Wn.2d 578, 262 P.2d 533 (1953); an hour's detour on personal business by an individual hired to deliver a car from a garage to the defendant's home, *Savage v. Donovan,* 118 Wash. 692, 204 P. 805 (1922)). By no means must the issue always be decided by trial; the facts in some cases permit only one reasonable inference. When this is true, the court should decide it as a matter of law (*see Nelson v. Broderick & Bascom Rope Co., supra,* and *Gray v. Department of Labor & Indus., supra,* challenges to sufficiency of evidence sustained; *Foote v.*

*Grant, supra,* and *Savage v. Donovan, supra,* held that the issue should not have been submitted to the jury).

■ *Foote v. Grant, supra,* is of special help to us for two reasons. First, it points out that an employee's explanation of his activity can be so incredible as to be an affront to reasonable minds and, accordingly, can be discounted or disregarded altogether. *Foote,* 55 Wn.2d at 799. *See also Savage v. Donovan, supra.* Second, it provides a specific focus for the analysis of this record. By no stretch can it be contended that Lake was in the scope of his employment through the time of his alcoholic sojourn with the hitchhikers. Therefore, stripped of embellishment, the question presented is whether Lake had "returned to his point of departure from the business route, or at least to the general area where his business duties might have brought him if he had not deviated." *Foote,* 55 Wn.2d at 800. We hold as a matter of law he had not.

At the time of the accident, Lake was some 6 miles beyond the jobsite which he had passed earlier. He was in no condition to resume work, and without hope of performing within the required time in any event. The suggestion that there could be a rational difference of opinion as to whether Lake was in the scope of his employment is an affront to reason. Viewed in the light most favorable to Hays, the most the evidence indicates is that Lake intended to return to his duties, but intent alone is not enough to bring him back within the scope of his employment. *Foote,* 55 Wn.2d at 801; *Nelson,* 53 Wn.2d at 242.

Hays tries to avoid the harsh factual reality of this case by arguing that witness credibility is in issue and, therefore, summary judgment is inappropriate.[1] We disagree.

---

[1]*Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963) and *Felsman v. Kessler,* 2 Wn. App. 493, 468 P.2d 691 (1970), relied upon by Hays, are inapposite. *Felsman* involved a defendant who refused to answer various questions during discovery, and *Balise* dealt with a defendant who took contradictory positions regarding the employment issue, first initiating a workman's compensation claim for his injuries and later abandoning that claim and denying that he was within the course of his employment. Lake, on the contrary, has answered all questions

■ Credibility issues may preclude summary judgment in some circumstances, but these must involve more than collateral matters. *Amend v. Bell,* 89 Wn.2d 124, 570 P.2d 138, 95 A.L.R.3d 225 (1977). Hays attempts to raise credibility issues by showing inconsistencies in what various defense witnesses have said regarding employees' use of their own cars,[2] and the amount of time allowed for completing assigned work. These are, at best, collateral issues which cannot affect the outcome. Credibility is not a talisman, the invocation of which can compel a trial where there are no triable issues.

Affirmed.

REED, J., concurs.

PETRIE, J. (dissenting)—My disagreement with the majority stems from a basic disagreement with what the law of this case is or should be. The essential issue involves the precise time at which Lake, having deviated from his course of employment, reentered that employment. The trial court held that, at the time the accident occurred, Lake was not yet "close" enough to the business establishment he was to clean.[3] The majority perpetuates this vague test by resort to Restatement (Second) of Agency § 228(1)(b) (1958) which declares, in pertinent part, that conduct is within the scope of employment if it is substantially within the authorized "space limits" of the worker's employment.

---

and consistently maintained that he was planning to go back to work.

[2] In any event, even where transportation is provided, the courts continue to make a distinction between driving for the benefit of the employer—*i.e.,* within the scope of employment—and simply driving with the employer's permission. *Amend v. Bell, supra; Balise v. Underwood, supra; Foote v. Grant, supra.*

[3] From the record before us, a jury could well find that, moments before the accident, on his way to the establishment he was directed to clean, Lake reached the main roadway which would take him directly to that establishment. Inadvertently, he made the wrong turn onto that road. Realizing his error, he attempted to make a U–turn and drove headlong into plaintiff's vehicle.

If that is the test, then I would hold that Lake was within the course of his employment at the time of the accident simply because his employer failed to limit his method and route of travel in order to complete his night of employment. *See Foote v. Grant,* 55 Wn.2d 797, 803, 350 P.2d 870 (1960), where the court summarized its holding

> that if Wernegreen [the deviating driver] had his own choice of routes to Seattle, despite the specific designation in his agreement [of employment], there might have been a justification of his choice of the much longer coast route . . .

Nevertheless, I choose not to perpetuate the poverty of the rule as stated by the majority. Instead, I would replace the vague spatial limits rule with a more exacting rule as follows:

> [W]here an employee is required to operate a vehicle on the streets or highway, and is injured after having made a temporary departure from the service of his employer, for matters of a personal nature reasonably to be undertaken and not expressly forbidden, and such matters have been accomplished and the service of the employer again becomes the principle [*sic*] object of travel, and the street on which the accident happens is not more hazardous than any other route of travel, the employee may be said to be again within the course of his employment, notwithstanding the accident causing injury occurs before he has reached the point where, in the performance of his duty, he is required to be.

7 W. Schneider, *Workmen's Compensation* § 1684, at 404 (1950).

Professor Larson states the reentry rule even more succinctly:

> [W]ith a completed personal errand put behind, and a business destination remaining to be reached, there is the clearest kind of coverage: . . .

1 A. Larson, *Workmen's Compensation* § 19.25, at 4–300 to 4–301 (1982); and see cases cited therein. Lake had long since completed his "personal errand," and the same had been "put behind" before the accident occurred.

I would reverse the summary judgment and remand for trial.

Reconsideration denied April 4, 1984.

Review denied by Supreme Court June 8, 1984.