[No. 7115-4-III.   Division Three.   July 24, 1986.]

RICHARD L. POWELL, *Respondent,* v. VIKING INSURANCE COMPANY, *Appellant.*

496

*J. Scott Miller* and *Turner, Stoeve, Gagliardi & Goss,* for appellant.

*Paul J. Burns* and *Mathew D. Griffin, Inc., P.S.,* for respondent.

REED, J.—Viking Insurance Company appeals a summary judgment finding underinsured motorist coverage, under a policy issued by Viking to Richard Powell, for injuries suffered by Powell in a motorcycle accident allegedly caused by a "phantom vehicle." We reverse.

On June 24, 1984, Richard Powell was seriously injured in an accident in Spokane. Powell had been traveling on his motorcycle southbound in the left lane of Maple Street

with his wife, Renee, following in her car in the right lane. As he was approaching an intersection at about 30 m.p.h., he swerved into the right lane, lost control of his motorcycle and crashed to the pavement. Powell lost consciousness and was unable to give a statement to the police. The police report stated that no other vehicle was involved in the accident.

At the time of the accident Mr. Powell had underinsured motorist coverage under a motorcycle insurance policy issued by Viking Insurance Company, and he submitted a claim under that coverage. In a statement to an insurance investigator on July 3, 1984, Powell stated that the accident was caused by his attempt to avoid a car entering the intersection from the left. In a statement given the same day, Renee Powell stated that she did not see a car attempt to enter the intersection, although she indicated that her husband changed lanes for some reason and that it was certainly possible that a car had pulled out from the side street. However, in an affidavit given on January 9, 1985, Renee stated that her husband had swerved on his motorcycle to avoid colliding with a vehicle that had pulled out into Maple Street "immediately and directly" into her husband's "lane of travel."

Viking denied Powell's claim for coverage which was based upon his contention that the accident was caused by a "phantom vehicle." The Viking policy, in its underinsured motorist endorsement, provides:

> An underinsured *motor vehicle* may also be a "phantom" vehicle which causes a *motorcycle accident* and can be confirmed by adequate proof from someone other than *you* or anyone making a claim for damages.
>
> . . .
>
> A "phantom vehicle" means a motor vehicle which has no physical contact with *you* or the *motorcycle we* insure and causes bodily injury or property damage to *you* in the accident. However, *you* or someone on *your* behalf must report the accident to the police within 72 hours
>
> . . .

The definition section states:

The terms that are defined below are in *italics* when they appear in the text of this policy. . . . *You, your, yourself* means the person named on the declarations page and that person's husband or wife if a resident of the same household. . . .

Viking's denial of Powell's claim was based upon the policy requirement that the existence of the phantom vehicle be corroborated by someone other than the named insured, the named insured's spouse, or anyone making a claim.

Powell brought a declaratory judgment action against Viking, arguing that under the underinsured motorist statute, his wife can corroborate the existence of the phantom vehicle. Both parties moved for summary judgment. The trial court denied Viking's motion and granted Powell's motion. The court agreed with Powell's argument that the statute allows his wife to testify to the existence of the phantom vehicle.

We look first at the policy language. A named insured's spouse comes within the definition of *you*, the underlined term in the policy. Because the policy states that a phantom vehicle "can be confirmed by adequate proof from someone other than *you* . . .," Renee Powell is precluded from confirming the existence of the phantom vehicle by the unambiguous terms of the policy.

We next consider the statutory language. The relevant part of RCW 48.22.030, the underinsured motorist statute, states:

(8) For the purposes of this chapter, a "phantom vehicle" shall mean a motor vehicle which causes bodily injury, death, or property damage to *an insured* and has no physical contact with *the insured* or the vehicle which *the insured* is occupying at the time of the accident if:

(a) The facts of the accident can be corroborated by competent evidence other than the testimony of *the insured* or any person having an underinsured motorist claim resulting from the accident . . .

(Italics ours.) The initial question is whether, in subsection (8)(a), "the insured" means, as Powell contends, the particular insured who is making the claim, by virtue of his occu-

pancy in the vehicle at the time of the accident, or whether "the insured" means, as Viking contends, any person insured under the policy. Under Viking's interpretation, the spouse of the named insured could not corroborate the facts of the accident, an interpretation that would be consistent with Viking's policy language. Under Powell's interpretation, which would not automatically preclude corroboration by the named insured's spouse, the policy language would be more restrictive than the statutory language. An insurer may not limit coverage that is mandated by statute. *Finney v. Farmers Ins. Co.*, 92 Wn.2d 748, 751–52, 600 P.2d 1272 (1979). In this case we agree with Powell that Viking's attempt to restrict or limit coverage is ineffective.

■■ In construing a statute, the court's paramount duty is to ascertain and carry out the intent of the Legislature. *Service Employees Int'l, Local 6 v. Superintendent of Pub. Instruction,* 104 Wn.2d 344, 348, 705 P.2d 776 (1985); *Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 1, 5, 665 P.2d 891 (1983). To determine the intent of the Legislature, the court must look first to the language of the statute. *Service Employees Int'l, Local 6 v. Superintendent of Pub. Instruction, supra.* Where statutory language is plain and unambiguous, the statute's meaning must be derived from the wording of the statute itself. *Human Rights Comm'n v. Cheney Sch. Dist. 30,* 97 Wn.2d 118, 121, 641 P.2d 163 (1982). Statutory language is ambiguous when it is uncertain or susceptible to more than one meaning. *State v. Theilken,* 102 Wn.2d 271, 276, 684 P.2d 709 (1984). Absent statutory definition, the words of a statute must be given their usual and ordinary meaning. *Adams v. Department of Social & Health Servs.,* 38 Wn. App. 13, 16, 683 P.2d 1133 (1984).

The meaning of the statute here can be determined from its wording, albeit a close and careful reading is necessary. "An insured" logically refers to any person insured under the policy, and does not refer only to the "named insured," a term used elsewhere in the statute. *See* RCW 48.22-.030(2), (4). The use of the definite article "the" in "the

insured" restricts the meaning of the latter term to certain insureds within the class of those insured. That restriction is clarified by the phrase "the vehicle which *the insured* is occupying at the time of the accident . . ." (Italics ours.) RCW 48.22.030(8). Thus, "the insured", as used in RCW 48.22.030(8)(a) means the person who is insured under the policy and, for purposes of this case, who is occupying the vehicle involved in the accident.

██ We cannot presume, as Viking contends, that the Legislature intended no difference between "an insured" and "the insured". In construing a statute, the court must give effect to all the language used. *In re Marriage of Timmons,* 94 Wn.2d 594, 600, 617 P.2d 1032 (1980). No word of a statute should be deemed superfluous, void, or insignificant. *UPS v. Department of Rev.,* 102 Wn.2d 355, 361–62, 687 P.2d 186 (1984).

Our construction of the statute does not, however, mean that a spouse can, under all circumstances, provide independent corroboration[1] of the facts of the accident. The statute precludes that corroboration from "any person having an underinsured motorist claim resulting from the accident . . ." RCW 48.22.030(8)(a). Thus, either by being in that category or in the category of "the insured", a spouse suffering bodily injury from the accident would be precluded. A spouse may have a claim for loss of consortium deriving from the other spouse's injuries. *See Christie v. Maxwell,* 40 Wn. App. 40, 696 P.2d 1256 (1985). If a spouse *has* such a claim, the *statute* requires corroboration independent of any testimony of that spouse. Further, a spouse may have a claim in the sense that the recovery, or a portion thereof, may be characterized as community property. Those portions of a personal injury award which reimburse for injury–related expenses and compensate for lost wages

---

[1]"Independent corroboration", as we will use the term in this opinion, refers to that corroborative evidence "other than the testimony of the insured or any person having an underinsured motorist claim resulting from the accident", which is necessary to establish coverage.

and earning capacity are community property if the funds being reimbursed and the wages and earning capacity in question are community in character. *In re Marriage of Brown,* 100 Wn.2d 729, 738, 675 P.2d 1207 (1984). The same would be true of any recovery for damage to community property. Cross, *The Community Property Law in Washington,* 61 Wash. L. Rev. 13, 66 (1986). Thus, a situation where the spouse of "the insured" would share in a community recovery is equivalent to the spouse "having a claim" under the language of the statute, and the restriction of the statute would apply. To allow otherwise would defeat the obvious purpose of the statute, which is to require impartial evidence of the existence of a phantom vehicle.

We now decide whether Renee Powell may provide independent corroboration of the facts of the accident. Although she is within the category of *"you"* within the terms of the policy, we cannot enforce that policy restriction here because it would function to limit coverage mandated by the statute. *Finney v. Farmers Ins. Co., supra.* The statute, as we have decided, contains no such per se spousal corroboration exclusion. Reading further in the policy, Renee would not be excluded under the subsequent clause further restricting "anyone making a claim for damages" from providing independent corroborating evidence. No evidence suggests that Renee is *making* a claim for damages.[2] This clause by itself appears less restrictive than the comparable statutory clause precluding those who *have* a claim, which presumably includes those who have but do not make a claim. An insurance policy which is, after all, a contract, may provide greater coverage than that mandated by statute.

---

[2] In his brief, Powell explicitly denies that his wife is making a claim for damages. Powell's complaint for declaratory relief also is carefully phrased, making no reference to any claims on behalf of the marital community. We were not provided with a copy of the "claim" Powell submitted to Viking. Should a claim be made on behalf of the Powell marital community, Renee Powell's testimony alone would not be sufficient to establish the existence of the phantom auto.

In sum, because, under the statute, Renee is not "the insured" who occupied the vehicle at the time of the accident, and because, under the policy language, she is not "making" a claim for damages, either individually or as a member of the marital community, she may independently corroborate the existence of the alleged phantom vehicle.

■ Additionally, we note that, although the parties and apparently the trial court treated the question as one of the competency of Renee to testify, RCW 48.22.030(8) does not establish incompetency or disqualify testimony. Rather, the statute merely requires proof over and above that of the testimony of "the insured" or of one who has an underinsured motorist claim *or of both*.[3] Corroborating evidence, as used in the statute, means evidence that tends to strengthen or confirm the testimony of the insured and/or other claimants. *See Farmers Ins. Exch. v. Colton*, 264 Or. 210, 504 P.2d 1041, 1045 (1972) (interpreting identical language in Or. Rev. Stat. § 743.792(2)(g)(B)); 20 C.J.S. *Corroboration* 238. If the insurer and the insured disagree about coverage and submit the question to arbitration, as provided in the policy, the arbitrators will simply weigh the evidence, including the independent corroborating testimony, and, depending upon the weight of all the evidence, will grant or deny coverage. Without independent corroborating evidence there can be no coverage. If independent corroborating evidence is produced, coverage is not automatic; it may or may not exist.

■ Though we agree with the trial court that Renee Powell may provide independent corroborating evidence, we do not agree that summary judgment was thereby warranted. Summary judgment is properly granted if no genuine issue of material fact exists when the evidence and all reasonable inferences from the evidence are considered in

---

[3]For example, if Renee Powell had made a claim, she would still be able to testify to the facts of the accident. However, unless further *independent* corroboration, say from a bystander witness, was available, coverage under the policy would be denied.

the light most favorable to the nonmoving party. CR 56(c); *Dunlap v. Wayne,* 105 Wn.2d 529, 535, 716 P.2d 842 (1986). Under the circumstances, Renee's affidavit testimony, that her husband swerved to avoid hitting the phantom vehicle which had pulled out in front of him, does not mean that no issue of fact exists. In her initial statement to the insurance investigator, Renee stated that she did not see another car enter the intersection in front of her husband. Renee's conflicting statements raise a serious credibility problem that creates an issue of fact for the arbitrators as to the existence of the phantom vehicle. Credibility issues involving more than collateral matters may preclude summary judgment. *Amend v. Bell,* 89 Wn.2d 124, 129, 570 P.2d 138, 95 A.L.R.3d 225 (1977); *Hays v. Lake,* 36 Wn. App. 827, 836, 677 P.2d 792 (1984).

Summary judgment was therefore improper. Because of this holding, we need not reach the issue of the timeliness of the summary judgment motion.

Reversed and remanded for further proceedings consistent herewith.

McINTURFF, A.C.J., and THOMPSON, J., concur.

After modification, further reconsideration denied September 16, 1986.