[No. 15443-9-II.   Division Two.   September 24, 1993.]

NATIONWIDE INSURANCE, *Respondent*, v. MELVIN
WILLIAMS, ET AL, *Appellants*.

*Ronald G. Meyers*, for appellants.

*Richard S. Lowell* and *Magnuson Johnson & Lowell*, for respondent.

*Bryan P. Harnetiaux* and *Gary N. Bloom* on behalf of Washington State Trial Lawyers Association, amicus curiae.

*Bruce G. Lamb* on behalf of Washington Defense Trial Lawyers, amicus curiae.

SEINFELD, J. — Melvin and Antoinette Williams appeal from an order denying their motion for summary judgment, staying arbitration and granting summary judgment to their insurer, Nationwide Insurance. Nationwide persuaded the trial court that its policy does not cover the Williamses' underinsured motorist (UIM) claim because of the lack of corroborating evidence that Mel Williams was run off the road by a "phantom" vehicle. We reverse the trial court.

As he traveled from his home on the Gig Harbor peninsula toward Tacoma for an early morning meeting, Mel Williams's pickup truck left the roadway and smashed into a tree. The accident occurred near an intersection of two state

roads. Williams had the right of way; a stop sign controlled the intersecting traffic. The cab area of Williams's truck was badly damaged, apparently due to the impact with the tree, but he managed to unbuckle his seat belt and crawl out of the vehicle. After several minutes, nearby residents and aid personnel arrived at the scene. No one other than Williams witnessed the accident and, by the time help arrived, no other cars were present at the scene. However, as he lay near his truck, bleeding and drifting in and out of consciousness, Williams moaned that he had been run off the road by another vehicle. At the hospital the emergency room doctor diagnosed various injuries, including a fractured nose, contusions, lacerations, and neck injuries, and noted in his chart that Williams had been run off the road by another vehicle.

Williams submitted a claim for medical expenses and property damage to Nationwide, which the company paid. Approximately 5 years later, Williams sought additional compensation under the UIM portion of his policy and, apparently, requested arbitration to determine liability and damages.

The Williamses' insurance policy includes coverage for property damage caused by the owner or driver of an underinsured motor vehicle. The policy provides:

> In any underinsured motorists claim, we will jointly determine with **the insured** or his legal representative whether there is legal right to recover damages and, if so, in what amount. If agreement cannot be reached with regard to liability or amount of damages, the matter will be decided by arbitration.

An underinsured motor vehicle is described, in relevant part, as

> (c) a "hit-and-run" **motor vehicle** or **phantom vehicle** which causes **property damage** to your property.
> Identity of the driver and the owner of the "hit-and-run" vehicle must be unknown. A **phantom vehicle** is one which causes **property damage** to the insured property but which has no physical contact with it. These accidents must be reported to the police or proper governmental authority within 72 hours. *The facts of the **phantom vehicle** accident must be*

*corroborated by competent evidence other than the testimony of the insured . . .[.]*

(Italics ours.)[1]

In support of his allegation that he was forced off the road by a phantom vehicle, Williams offered evidence consisting of his own statements made at the time of the accident or shortly thereafter. Williams tried to convince Nationwide that his statements describing a phantom vehicle as the cause of the accident were "excited utterances" and, therefore, not excluded as "testimony of the insured".[2] Nationwide did not accept Williams's corroborative evidence and moved in superior court for a stay of arbitration, demanding a jury trial on the issue of coverage. Both parties then moved for summary judgment.[3]

The trial court reviewed Mel Williams's alleged "excited utterances", presented in the form of affidavits of Mike White

---

[1] RCW 48.22.030(8) similarly defines a phantom vehicle:

"(8) For the purposes of this chapter, a 'phantom vehicle' shall mean a motor vehicle which causes bodily injury, death, or property damage to an insured and has no physical contact with the insured or the vehicle which the insured is occupying at the time of the accident if:

"(a) The facts can be corroborated by competent evidence *other than the testimony of the insured* . . .; and

"(b) The accident has been reported to the appropriate law enforcement agency within seventy-two hours of the accident." (Italics ours.)

[2] ER 803(a)(2), the excited utterance exception to the rule against hearsay evidence, applies to "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

[3] The procedural history of this case is somewhat unclear. We assume the matter found its way to superior court via RCW 7.04.040 which gives either party to an arbitration agreement "the right to demand the immediate trial by jury of any such issue concerning the validity or existence of the arbitration agreement or the failure to comply therewith. Such demand shall be made . . . in the application for a stay of the arbitration . . .." RCW 7.04.040(3).

Nationwide petitioned for stay of arbitration and asked the trial court to summarily declare noncoverage on the theory that Mel Williams's excited utterances could not be competent corroborating evidence. The Williamses also moved for summary judgment, contending the excited utterances were competent corroborating evidence, a prerequisite for coverage. The Williamses opposed the motion for stay of arbitration; they wanted an arbitrator to determine damages.

and Craig Brown. Mike White lived near the accident site and was awakened by the noise of the crash. He investigated and discovered Mel Williams "conscious and coherent. He [Williams] asked several times if anybody had seen another car involved. He [Williams] made several references to another car that he had apparently tried to avoid, causing the impact with the tree." Craig Brown also was awakened by the crash. He, too, investigated and "heard moaning and found a man lying on the ground near the truck. He was real bloody and obviously badly hurt. He said 'somebody ran me off the road'." Williams also submitted to the trial court the emergency room doctor's notes, taken approximately an hour after the accident: "[t]he patient states that he was the driver wearing a seat belt when he was run off the road by another vehicle [resulting in Williams's vehicle] striking a pole." .

In addition, Williams offered the affidavit of Robert Broshears, an accident reconstruction expert. Although he conducted his investigation 5 years after the accident, Broshears opined "Melvin Williams did in fact attempt to avoid a collision with another vehicle and as a result lost control and ran off the road." Broshears based his analysis in part upon his interview with Williams and upon his review of Williams's statements immediately following the crash. Williams supplemented the above evidence with the affidavit of a friend who stated he had seen the skid marks on the highway several hours after the accident, and with the affidavit of the business associate with whom Williams had been scheduled to meet on the morning of the accident. Apparently to rebut Nationwide's theory that Williams fell asleep at the wheel, Williams's business colleague stated Williams was never late for meetings.

The trial court denied the Williamses' motion and granted Nationwide's motion, concluding that UIM coverage "is unavailable for [the Williamses'] claims arising from the 12/2/84 automobile accident. . .". The trial court explained its ruling, stating that all of the Williamses' proffered evidence

was traceable to Mel Williams's own statement; therefore, the Williamses did not provide the required corroboration of the phantom vehicle by "competent evidence other than the testimony of the insured". Because the Williamses lacked coverage, the trial court also denied their request for arbitration. The Williamses now appeal both the summary judgment of no coverage and the stay of arbitration.

When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. We consider all of the evidence in the light most favorable to the nonmoving party, and affirm only if, based on that evidence, we are satisfied that there is no issue of material fact and reasonable persons could reach but one conclusion. *Marincovich v. Tarabochia,* 114 Wn.2d 271, 274, 787 P.2d 562 (1990).

Here, through the affidavits of White and Brown, Williams has placed before the trial court evidence of his excited utterances. If the contents of these affidavits are admissible as proper corroborating evidence, the Williamses indisputably have raised an issue of material fact regarding the existence of the phantom vehicle and have satisfied the UIM coverage requirement. In that event, we would be required to conclude that the trial court erred in granting summary judgment to the insurer. Thus, we first must determine whether an insured can use evidence of his or her own excited utterances to satisfy the UIM statutory and policy requirements for corroboration of a phantom vehicle by "competent evidence other than the testimony of the insured". We decide in the affirmative. Several lines of analysis support our holding.

When construing a statute, "the court's paramount duty is to ascertain and carry out the intent of the legislature." *Powell v. Viking Ins. Co.,* 44 Wn. App. 495, 499, 722 P.2d 1343 (1986). The purpose of RCW 48.22.030, "Underinsured, hit-and-run, phantom vehicle coverage to be provided — Exceptions — Conditions — Deductibles", is to provide broad protection against financially irresponsible motorists. Courts will liberally construe the statute in order to meet

that legislative goal. *Kenworthy v. Pennsylvania Gen. Ins. Co.*, 113 Wn.2d 309, 313, 779 P.2d 257 (1989). However, the broad goal of protection must be balanced against another purpose of the statute, the prevention of fraudulent claims; "hence, the need for testimony from someone other than the claimant or anyone else who stands to benefit from proof of a 'phantom vehicle.' " *Gobin v. Allstate Ins. Co.*, 54 Wn. App. 269, 273, 773 P.2d 131 (1989). Based on our reading of RCW 48.22.030(8), we are satisfied that the inclusion of excited utterances within the parameters of "competent evidence other than the testimony of the insured" meets both of the above goals.

To determine the meaning of RCW 48.22.030(8) (and the identical language of the insurance policy), we apply rules of statutory construction.[4] Undefined statutory terms must be given their usual and ordinary meaning and courts may not read into a statute meanings which are not there. *Dominick v. Christensen*, 87 Wn.2d 25, 27, 548 P.2d 541 (1976). RCW 48.22-.030(8) leaves the term "testimony" undefined. Thus we turn to the dictionary. *See Codd v. Stevens Pass, Inc.*, 45 Wn. App. 393, 399, 725 P.2d 1008 (1986), *review denied*, 107 Wn.2d 1020 (1987). The dictionary defines "testimony" as: "a declaration or statement made under oath or affirmation by a witness in a court, often in response to questioning, to establish a fact". *Webster's New World Dictionary* 1470 (2d College ed. 1976). Black's Law Dictionary 1646 (rev. 4th ed. 1968) similarly defines "testimony" as "Evidence given by a competent witness, under oath or affirmation; as distinguished from evidence derived from writings and other sources." Black's Law Dictionary then cites numerous authorities for the proposition that the terms "testimony" and "evidence" are not synonymous; evidence is the broader term and includes all testimony.

---

[4] The Williamses' insurance policy recites the operative language of RCW 48.22.030; thus, we will not engage in a separate analysis of the insurance contract. *See Touchette v. Northwestern Mut. Ins. Co.*, 80 Wn.2d 327, 335, 494 P.2d 479 (1972) ("the intendments of the statute are read into and become a part of the contract of insurance.").

Viewing Mel Williams's statements in light of this common meaning of the term "testimony", we see that his out-of-court, unsworn excited utterances are not testimony and thus are not excluded by the insurance policy or the statute. Had the Legislature or Nationwide intended to eliminate the use of *any* statement made by the insured, they would not have chosen the word "testimony", associated with in-court proceedings. Rather, they could have simply prohibited evidence consisting of "statements" made by the insured.

The Rules of Evidence, which the Legislature is presumed to know, further support our reading of the statute. *See Thurston Cy. v. Gorton,* 85 Wn.2d 133, 138, 530 P.2d 309 (1975) (Legislature presumed to enact laws with full knowledge of existing laws). ER 803(a)(2), the excited utterance exception to the rule against hearsay evidence, applies to "[a] *statement* relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." (Italics ours.) ER 801(c) defines "hearsay" as "a *statement,* other than one made by the declarant while *testifying* at the trial or hearing, offered in evidence to prove the truth of the matter asserted." (Italics ours.) The statute and the insurance policy preclude the "testimony" of the insured but do not preclude the possibility of corroboration by admissible hearsay statements.

Nor does consideration of an excited utterance of the insured undermine the legislative intent to prevent fraud. To the contrary, the excited utterance exception to the rule against hearsay evidence is grounded in the notion that under the stress of excitement caused by a startling event a declarant may spontaneously blurt out a statement, and, because of the circumstances, will not have the opportunity to fabricate. *State v. Dixon,* 37 Wn. App. 867, 872, 684 P.2d 725 (1984).

The term "corroborating evidence" in the context of RCW 48.22.030(8) means "evidence that tends to strengthen or confirm the testimony of the insured . . .". *Powell,* 44 Wn. App. at 502. An excited utterance consistent with a driver's

claim that he or she was run off the road would tend to "strengthen or confirm" his or her testimony.

We conclude that it is permissible for the Williamses to meet the threshold burden of presenting competent corroborating evidence of a phantom vehicle claim with Mel Williams's excited utterances. Such evidence, presented by a witness who heard the excited utterance, is not the "testimony of the insured" and thus is not excluded by the policy or the statute.

The Williamses contend that the trial court further erred in denying their motion for summary judgment of coverage. The trial court denied the Williamses' motion because it determined that they did not have any corroborative evidence, as required for coverage. However, Nationwide did not dispute that the statements made by Mel Williams and set forth in the White and Brown affidavits meet the criteria for admission as excited utterances: sufficient spontaneity and trustworthiness to provide the circumstantial guaranties of reliability and truthfulness required under ER 803(a)(2). *See Dixon,* 37 Wn. App. at 872-73. Based on our holding that excited utterances may be used as corroborative evidence, we conclude that the trial court erred in denying summary judgment to the Williamses.[5]

The Williamses have raised several additional arguments. They contend that they presented competent corroborating evidence sufficient to withstand summary judgment even absent consideration of the alleged excited utterances and

---

[5]In so concluding, however, we do not express any opinion as to the merits of the underlying controversy over liability and damages. Our sole concern is whether the parties bound themselves to arbitrate this dispute. *See Meat Cutters Local 494 v. Rosauer's Super Markets, Inc.,* 29 Wn. App. 150, 154, 627 P.2d 1330 (court's function is limited to a determination of whether party seeking arbitration is making a claim which is governed by the contract; merits of the grievance must be decided by arbitrator), *review denied,* 96 Wn.2d 1002 (1981).

We simply hold that the Williamses have produced the minimum amount of corroborative evidence necessary to put the matter before an arbitrator. The arbitrator will have the task of weighing the evidence and evaluating the claim in light of the statute and insurance contract.

that Nationwide's inadequate investigation of the accident prevents it from asserting lack of corroborating evidence. In light of our disposition of the motions for summary judgment, it is unnecessary to reach the merits of these issues.

Accordingly, we reverse the trial court's orders granting summary judgment to Nationwide and denying summary judgment to the Williamses. We remand to the trial court to lift the stay of arbitration to allow the arbitrator to consider and weigh the evidence in order to determine the liability and damage issues.

ALEXANDER, C.J., and PETRICH, J. Pro Tem., concur.

Review denied at 123 Wn.2d 1022 (1994).