[No. 24219-2-II.   Division Two.   September 1, 2000.]

TUMWATER POLICE OFFICERS' GUILD, *Appellant*, v. THE EMPLOYMENT SECURITY DEPARTMENT, *Respondent*.

318

*James M. Cline* (of *Cline & Emmal*), for appellant.

*Christine O. Gregoire, Attorney General*, and *Joyce A. Roper, Assistant*, for respondent.

ARMSTRONG, C.J. — Some members of the Tumwater Police Officers' Guild want to opt out of the social security system. In an action before the federal Social Security Administration, the Guild argued that the Tumwater Police Department was improperly enrolled in social security coverage in 1955. At that time, a federal statute allowed city employees, previously excluded, to be enrolled in social security if the employees were not already covered by a state retirement plan. In 1955, the Town of Tumwater was making retirement contributions into the State's volunteer firemen's retirement fund for two police officers. Ch. 41.24 RCW. In spite of these contributions and the fact that the officers had received benefits, the state OASI Administrator determined that the officers were ineligible to be included under the volunteer firemen's pension fund.[1] The federal administrative law judge held that any challenge to the OASI Administrator's determination was a question of state law that must be appealed through the state courts.

The Guild then sought a declaratory judgment from the Thurston County Superior Court stating that Tumwater police employees were not properly included in the federal social security system in 1955 because they were enrolled in a state retirement program. On cross-motions for summary judgment, the trial court ruled in favor of the Employment Security Department, concluding that the Tumwater police

---

[1] OASI stands for old-age and survivors' insurance.

officers were not qualified to be members of the volunteer firemen's pension system. The court refused to make any determination of the police officers' eligibility for social security coverage in 1955, declaring it a question of federal law. The Guild appeals, challenging only the determination that the police officers were not properly enrolled in the volunteer firemen's pension system. We affirm.

## FACTS

In 1950, the federal Social Security Act was amended to allow states and their political subdivisions to enroll public employees in the old-age and survivors' insurance coverage (OASI). Social Security Act Amendments of 1950, Pub. L. No. 734, § 218, 64 Stat. 477, 514-17 (current version at 42 U.S.C. § 418). But public employees already covered by a state or local government retirement system were excluded from participation. Section 218(2)(d), 64 Stat. at 515. To enroll public employees in the federal program, states were required to enter into agreements with the Social Security Administration. Section 218(a)(1), 64 Stat. at 514.

In 1951, the Washington Legislature extended OASI coverage to state and local employees based on the 1950 federal amendments. LAWS OF 1951, ch. 184, § 1 (amended 1955). The Legislature's intent was "to provide such protection to employees of the state and its political subdivisions on as broad a basis as is permitted under the social security act." *Id*. The Legislature also stated:

> Nothing in this act shall be construed . . . to allow or authorize the governor or the governing body of any political subdivision, either separately or acting together, . . . to put under the federal social security act any persons *now members or protected by* any state or local pension or retirement plan or system.

*Id*. (emphasis added).

By ordinance, the Town of Tumwater provided for the enrollment of its employees in OASI and submitted an application and agreement to the Department on April 1,

1955. The agreement included the police department in the list of covered employees but expressly excluded the volunteer fire department from coverage. Apparently, the State amended its agreement with the Social Security Administration to include the Tumwater employees on May 2, 1955.[2]

In 1954, Congress again amended the Social Security Act to allow state and local employees already covered by a state or local retirement program to enroll in OASI. Social Security Amendments of 1954, Pub. L. No. 761, § 101(h), 68 Stat. 1052, 1055-59 (current version at 42 U.S.C. § 418 (d)). But the decision to enroll had to be determined by a referendum of the employees in the coverage group. Section 101(h)(3)(A)-(E), 68 Stat. at 1056. Washington did not adopt the 1954 amendments until June 22, 1955,[3] after the Tumwater police had been enrolled in OASI.[4]

In 1955, the Town of Tumwater paid annual fees to the Volunteer Fire fighters' Relief and Pension Fund on behalf of two Tumwater police officers, Willard Couch and Earl Shaw. Couch and Shaw were employed as full-time police officers in 1955. A volunteer with the Tumwater Fire Department from 1951 to 1994 attested that Couch and Shaw "were not members of the Tumwater Fire Department" between 1952 and 1956. After investigating the circumstances under which the two officers were included in the volunteer firemen's pension, the current Mayor of Tumwater said:

> While we find no records which definitively show that the City required that the positions which these employees served in be covered by the Washington State Volunteer Firefighters Pension and Relief Act, it is our opinion that in that time period the City used this as a mechanism to provide pension benefits for

---

[2] The cited document is illegible.

[3] See LAWS OF 1955, Ex. Sess., ch. 4, § 1 (codified at RCW 41.48.010).

[4] Although the 1954 amendments excluded police officers from OASI coverage, we are not asked to decide the question of whether the Tumwater police officers were eligible for enrollment in 1955. *See* Social Security Amendments of 1954, Pub. L. No. 761, § 101(h)(5)(A), 68 Stat. at 1057. This is a question of federal law to be determined in the Social Security Administration proceeding.

its police officers. Our records do indicate that the City paid the pension contributions in [sic] behalf of these individuals. In all likelihood the City would not have paid pension contributions unless the requirement had attached to the position.

Because both police officers are deceased, no additional information regarding their duties and enrollment in the volunteer firemen's pension system could be obtained.

## ANALYSIS

I. Were the Tumwater police officers eligible for participation in the Volunteer Firemen's Relief and Pension Fund?

In 1945, the State passed legislation allowing:

Any municipal corporation maintaining and operating a regularly organized fire department [to] make provision by appropriate legislation whereby any fireman may enroll under the pension provisions of [the Volunteer Firemen's Relief and Pension Act] for the purpose of enabling any fireman, so electing, to avail himself of the retirement provisions of this act.

Laws of 1945, ch. 261, § 2(b) (current version at RCW 41.24.020(2)). The Act further provided: "Every municipal corporation shall make provisions for the collection and payment of the fees . . . and shall continue to make such provisions for all firemen who come under this act as long as they shall continue to be members of its fire department." Section 2(c) (current version at RCW 41.24.020(3)).

The term "firemen" included "any fireman who is a member of any fire department of any municipality as herein defined." Section 1(c) (current version at RCW 41.24.010). "Fire department" was defined as "any regularly organized fire department consisting wholly of volunteer firemen, or any part-paid and part-volunteer fire department which is now or which hereafter may be duly organized and maintained by any municipality." Section 1(b) (current version at RCW 41.24.010).

Here, a volunteer fireman with the Tumwater Fire

Department attested that Couch and Shaw "were not members of the Tumwater Fire Department" from 1952 to 1956. The Guild offers no evidence to contradict this statement. The letter from the current Mayor of Tumwater, stating that "[i]n all likelihood the City would not have paid pension contributions unless the requirement had attached to the position," does not help in determining whether the police officers were eligible under the Act; it does not contradict the statement that the two Tumwater police officers were not members of the fire department in 1955. Therefore, under the plain language of the Act, the two police officers, who were not members of Tumwater's fire department, were not properly enrolled in the pension system.

■ But the Guild relies on section 19 of the Act, which provided: "The filing of reports of enrollment provided for by this act shall be *prima facie* evidence of the service of the firemen therein listed for the year of such report. . . ." Laws of 1945, ch. 261, § 19 (current version at RCW 41.24.190). The Guild contends that, because the State accepted Tumwater's enrollment form, this constitutes prima facie evidence that the police officers also served as fire fighters.

The Guild misconstrues the language of section 19. The statute provides that enrollment "shall be *prima facie* evidence of *service* of the firemen . . . *for the year of such report*." Laws of 1945, ch. 261, § 19 (emphasis added in part). Enrollment provides evidence of one year of service for the fireman, who is by definition a member of a fire department. It does not provide prima facie evidence that a police officer listed on the enrollment form meets the definition of a fireman under the Act.

■ Both parties rely on *City of Kennewick v. Board for Volunteer Firefighters*, 85 Wn. App. 366, 933 P.2d 423 (1997). There, Division Three held that the payment of an annual contribution to the volunteer fire fighters' pension fund by inactive members did not entitle those individuals to participate in the pension program. *Id.* at 368. The court said, "Eligibility for pension benefits is based in part on

service 'as an active member in any capacity, of any regularly organized volunteer fire department . . . .' " *Id.* at 369 (quoting RCW 41.24.170). And the court concluded that "[i]t is inconceivable that the Legislature intended to create a fire fighters' pension fund for individuals who, apart from paying an annual fee, engaged in no activity relating to fire fighting." *Kennewick*, 85 Wn. App. at 370. Although *Kennewick* is factually distinguishable, because it relates to service by firemen rather than the question of an enrollee's status as a fireman, it is equally inconceivable that the Legislature intended to include full-time police officers in the volunteer firemen's pension system.

Only firemen were eligible for enrollment in the pension system and, to be a fireman, a person had to be a member of a fire department. The provision that required the municipality to collect and pay fees for all firemen under the Act, as long as they continue to be members of its fire department, indicates that a city could not collect and make payments on behalf of individuals who were not members of the fire department. *See* LAWS OF 1945, ch. 261, § 2(c). Therefore, the collection of an annual fee for the two Tumwater police officers who were not members of the fire department did not confer upon them the status of firemen.

II.  If the officers were not eligible to enroll in the volunteer firemen's pension, were they "now members" or "protected by" a state pension or retirement fund at the time of enrollment in social security?

When the State extended OASI coverage to state and local employees in 1951, the Legislature said:

> Nothing in this act shall be construed . . . to allow or authorize the governor or the governing body of any political subdivision, either separately or acting together, . . . to put under the federal social security act any persons *now members or protected by* any state or local pension or retirement plan or system.[5]

LAWS OF 1951, ch. 184, § 1 (emphasis added).

The Guild asserts that to be "protected by" a pension

---

[5] Officer Couch was enrolled in the volunteer firemen's pension system in 1951.

system, the employee must meet the eligibility standard of the pension system. But they contend that the term "now members" of a state or local pension system "is separate and independent from whether they were intended to be protected by such a system." And, it argues, a retroactive finding that the police officers were ineligible and, therefore, not protected by a pension system does not "negate their status as 'now members'" of the pension system at the time they were enrolled in OASI coverage.

■■■■ The court's purpose in construing a statute is to ascertain and give effect to the intent and purpose of the Legislature. *State v. Williams*, 62 Wn. App. 336, 338, 813 P.2d 1293 (1991). To determine legislative intent, we look first to the language of the statute. Plain language does not require construction. *State v. Wilson*, 125 Wn.2d 212, 217, 883 P.2d 320 (1994). Undefined statutory terms are given their usual and ordinary meaning. *Nationwide Ins. v. Williams*, 71 Wn. App. 336, 342, 858 P.2d 516 (1993). A statute is ambiguous if it is susceptible to two or more reasonable interpretations. *State v. Sunich*, 76 Wn. App. 202, 206, 884 P.2d 1 (1994); *State v. Garrison*, 46 Wn. App. 52, 54, 728 P.2d 1102 (1986). If a statute is ambiguous, we may look to other sources to discern legislative intent. *Paulson v. County of Pierce*, 99 Wn.2d 645, 650, 664 P.2d 1202 (1983).

Reading the language of the Act does not resolve the issue of what the Legislature meant by using the similar terms "now members" and "protected by." Nor do any other sources help us to discern the meaning. The term "protected by" could refer to retired members who are receiving benefits but are not "now members" contributing to the pension system or it could refer to persons eligible for membership because they are members of the "coverage group" but not currently enrolled.[6] Either interpretation makes more sense than that suggested by the Guild.

---

[6] Under the 1951 amendments, OASI coverage was extended by agreement to "services performed by individuals as employees of [the] State or any political subdivision thereof." Social Security Act Amendments of 1951, Pub. L. No. 734, § 218(a)(1), 64 Stat. at 514. Coverage was applicable to "coverage groups"

■ We hold that eligibility for the pension system was required under either term, "protected by" or "now member." This is consistent with the Legislature's stated intent "to provide such protection to employees of the state and its political subdivisions on as broad a basis as is permitted under the social security act." LAWS OF 1951, ch. 184, § 1. If we interpret "now members" to include ineligible employees, some members could later be denied any pension coverage because they were declared ineligible for the state program and were not enrolled in social security. This too is not consistent with the Legislature's intent to provide broad eligibility for social security coverage.

III.　Equitable Estoppel

Without argument, the Guild contends that the State should be equitably estopped from declaring the police officers ineligible when the State accepted their payments and has not refunded the payments or declared the officers ineligible to receive benefits. We disagree.

■ "The principle of equitable estoppel is based upon the reasoning that a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon." *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 81, 530 P.2d 298 (1975). The elements of estoppel are: (1) an act or admission by the first party that is inconsistent with a later assertion; (2) an act by another party in reliance upon the first party's act or assertion; and (3) an injury that would result to the relying party if the first party were not estopped from repudiating the original act. *Kramarevcky v. Department of Soc. & Health Servs.*, 122 Wn.2d 738, 743, 863 P.2d 535 (1993); *Robinson v. City of Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318 (1992).

The Guild essentially charges the State with knowledge in 1955 that Couch and Shaw were police officers and were

designated by the State, and each "coverage group" had to include "all services . . . performed by individuals as members of such group," unless specifically excluded under the Act. Section 218(c)(1)-(2), 64 Stat. at 515.

not members of the fire department. Under the Volunteer Firemen's Relief and Pension Act, the Town of Tumwater, not the State, was authorized to make provision for enrolling firemen in the pension system. *See* LAWS OF 1945, ch. 261, § 2(b). When Tumwater remitted the annual fee to the State for each employee, it simply listed the person's name and the amount of the fee. There is no statement concerning the status or duties of the employees. The question of the police officers' eligibility for the pension system apparently became an issue when the Guild raised it with the Department and pursued this litigation. It is difficult to see how the Department's actions can be viewed as inconsistent. Refunding pension payments or informing the beneficiaries that the officers were ineligible in 1955 would have been premature pending the outcome of this action.

We affirm.

SEINFELD and HUNT, JJ., concur.